UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

                  :

UNITED STATES OF AMERICA

                  :

    - v. -                                  18 Cr. 16 (RJS)

                  :

AKAYED ULLAH,

                  :

        Defendant.

                  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS COUNT SIX OF THE INDICTMENT

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
One Saint Andrew's Plaza
New York, New York 10007

Shawn G. Crowley
Rebekah Donaleski
George D. Turner
Assistant United States Attorneys
    *Of Counsel*

## TABLE OF CONTENTS

BACKGROUND ....................................................................................................................... 1

I.    Offense Conduct........................................................................................................... 1

II.   The Charges.................................................................................................................. 3

DISCUSSION ........................................................................................................................... 4

I.    Legal Standard for Motions to Dismiss Indictments.................................................. 4

II.   Count Six Is Properly Alleged and Legally Sound .................................................... 4

    A.    The Defendant's Challenge to Count Six Fails as a Matter of
        Well-Established Law………………………………………………………………5

        1.   Applicable Law ..................................................................................... 6

            a.   The Double Jeopardy Clause and Multiplicity......................................... 6

            b.   Text and Legislative History of § 924(c) ................................................. 7

        2.   Argument................................................................................................ 8

            a.   The Court Need Not Reach the Question of Whether Count One Is a Crime of
               Violence to Resolve the Defendant's Motion ........................................ 8

            b.   Count Six Properly Alleges a Violation of § 924(c) .......................................... 10

            c.   Congress Intended § 924(c) to Impose Sentences Separate from and Consecutive
               to Predicate Crimes of Violence............................................................ 10

            d.   Non-Binding Interpretive Canons Afford No Basis for Relief ........................... 13

            e.   The Predicate Crimes of Violence Involved "Separate Acts"............................ 13

            f.   A Nearly Identical Motion Was Recently Rejected by Another Court in This
              District ................................................................................................... 15

    B.    Count One Is a Crime of Violence and, in Any Event, the Court Need Not Reach
        That Issue…………………………………………………………………………16

        1.   Background: § 924(c), § 2339B, and *Dimaya* ........................................... 16

        2.   Count One Qualifies as a Crime of Violence Pursuant to the "Underlying-Conduct"
           Approach Properly Applied to § 924(c)(3)(B) After *Dimaya*, But the Court Need
           Not Reach That Issue to Resolve the Defendant's Motion.................................... 19

CONCLUSION.......................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Apprendi* v. *New Jersey*, 530 U.S. 466 (2000)..................................................................... 22

*Blockburger* v. *United States*, 284 U.S. 299 (1932) ............................................................ 6

*Chapman* v. *United States*, 2018 WL 3470304 (E.D. Va. 2018)......................................... 25

*Chickasaw Nation* v. *United States*, 534 U.S. 84 (2001)..................................................... 13

*Corley* v. *United States*, 556 U.S. 303 (2009) ..................................................................... 13

*Garrett* v. *United States*, 471 U.S. 773 (1985) .................................................................... 7

*Hamling* v. *United States*, 418 U.S. 87 (1974) ............................................................... 4, 10

*In re Irby*, 858 F.3d 231 (4th Cir. 2017) .............................................................................. 21

*In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93 (2d Cir. 2008)............... 10

*INS* v. *St. Cyr*, 533 U.S. 289 (2001)..................................................................................... 22

*Johnson* v. *United States*, 135 S. Ct. 2551 (2015) ............................................... 18, 20, 21

*Lamie* v. *U.S. Trustee*, 540 U.S. 526 (2004)....................................................................... 13

*Missouri* v. *Hunter*, 459 U.S. 359 (1983) ........................................................................... 12

*Ovalles* v. *United States*, 861 F.3d 1257 (11th Cir. 2017).................................................. 21

*Rosemond* v. *United States*, 134 S. Ct. 1240 (2014)........................................................... 11

*Sessions* v. *Dimaya*, 138 S. Ct. 1204 (2018)............................................................... passim

*Shi Liang Lin* v. *U.S. Dep't of Justice*, 494 F.3d 296 (2d Cir. 2007)................................... 24

*Simpson* v. *United States*, 435 U.S. 6 (1978)...................................................................... 23

*United States* v. *Acosta*, 470 F.3d 132 (2d Cir. 2006) ....................................................... 17

*United States* v. *Arline*, 835 F.3d 277 (2d Cir. 2016) .......................................................... 7

*United States* v. *Barrett*, No. 14-2641 (2d Cir. 2014)........................................................ 23

*United States* v. *Chacko*, 169 F.3d 140 (2d Cir. 1999)........................................................ 6

*United States* v. *Chavez*, 2018 WL 3609083 (N.D. Cal. 2018) .......................................... 24

*United States* v. *Correia*, 2017 WL 80245 (D. Mass. 2017) ............................................. 21

*United States* v. *Cravens*, 2017 WL 6559798 (10th Cir. 2017).......................................... 21

*United States* v. *De la Pava*, 268 F.3d 157 (2d Cir. 2001) .................................................. 4

*United States* v. *Doctor*, 842 F.3d 306 (4th Cir. 2016)...................................................... 23

*United States* v. *Doe*, 145 F. Supp. 3d 167 (E.D.N.Y. 2015) ............................................ 17

*United States* v. *Eshetu*, 863 F.3d 946 (D.C. Cir. 2017)..................................................... 21

*United States* v. *Galati*, 844 F.3d 152 (3d Cir. 2016)...................................................................... 21

*United States* v. *Gaudin*, 515 U.S. 506 (1995) ................................................................................ 22

*United States* v. *Genovese*, 409 F. Supp. 2d 253 (S.D.N.Y. 2005)..................................................... 4

*United States* v. *Gill*, 748 F.3d 491 (2d Cir. 2014)........................................................................... 24

*United States* v. *Goba*, 240 F. Supp. 2d 242 (W.D.N.Y. 2003)........................................................ 18

*United States* v. *Goldberg*, 756 F.2d 949 (2d Cir. 1985)..................................................................... 4

*United States* v. *Guevara*, 408 F.3d 252 (5th Cir. 2005) .................................................................... 9

*United States* v. *Henderson*, 2017 WL 3820960 (M.D. Ga. 2017)................................................... 21

*United States* v. *Hernandez*, 228 F. Supp. 3d 128 (D. Me. 2017) .................................................... 21

*United States* v. *Hill*, 890 F.3d 51, 2018 WL 2122417 (2d Cir. 2018)..................................... 16, 17

*United States* v. *Holdridge,* 30 F.3d 134, 1994 WL 399526 (6th Cir. 1994) ............................... 12

*United States* v. *Ivezaj*, 568 F.3d 88 (2d Cir. 2009)........................................................................ 17

*United States* v. *Khalil*, 214 F.3d 111 (2d Cir. 2000) ............................................................ 7, 11, 12

*United States* v. *Laurent*, 861 F. Supp. 2d 71 (E.D.N.Y. 2011) ........................................................ 4

*United States* v. *Lindh*, 212 F. Supp. 2d 541 (E.D. Va. 2002)......................................................... 18

*United States* v. *Martoma*, 869 F.3d 58 (2d Cir. 2017) .................................................................... 24

*United States* v. *Mathews*, 36 F.3d 821 (9th Cir. 1994)............................................................. 12, 14

*United States* v. *Mohammed*, 27 F.3d 815 (2d Cir. 1994) ....................................................... passim

*United States* v. *Quigley*, 798 F. Supp. 451 (W.D. Mich. 1992) ..................................................... 12

*United States* v. *Rahimi*, 16 Cr. 760 (RMB) (S.D.N.Y.) ........................................................... 5, 15

*United States* v. *Rahimi*, 2017 U.S. Dist. LEXIS 96686 (S.D.N.Y. 2017)....................... 10, 15, 16

*United States* v. *Reid*, 369 F.3d 619 (1st Cir. 2004) ....................................................................... 10

*United States* v. *Rodriguez*, 2018 WL 1744734 (M.D. Pa. 2018) ................................................... 21

*United States* v. *Rodriguez-Moreno*, 526 U.S. 275 (1999)................................................... 10, 11, 21

*United States* v. *Salameh*, 261 F.3d 271 (2d Cir. 2001) ....................................................... 10, 11, 14

*United States* v. *Salas*, 889 F.3d 681 (10th Cir. 2018) ..................................................................... 9

*United States* v. *St. Hubert*, 883 F.3d 1319 (11th Cir. 2018)........................................................... 21

*United States* v. *Tsarnaev*, 157 F. Supp. 3d 57 (D. Mass. 2016)..................................................... 10

*United States* v. *Valle*, 807 F.3d 508 (2d Cir. 2015)........................................................................ 13

*United States* v. *Viglakis*, 2013 U.S. Dist. LEXIS 118919 (S.D.N.Y. 2013) ................................. 18

*United States* v. *Walker*, 473 F.3d 71 (3d Cir. 2007)....................................................................... 23

*United States* v. *Yousef*, 327 F.3d 56 (2d Cir. 2011) ............................................................... 10, 12

**Statutes**

18 U.S.C. § 16(b) ..................................................................................... 17, 18, 20

18 U.S.C. § 1992.......................................................................................... passim

18 U.S.C. § 2 ................................................................................................... 11

18 U.S.C. § 2119 ............................................................................................. 11

18 U.S.C. § 2332a ..................................................................................... passim

18 U.S.C. § 2332f ............................................................................... 4, 8, 9, 14

18 U.S.C. § 2339A .......................................................................................... 17

18 U.S.C. § 2339B ..................................................................................... 4, 17

18 U.S.C. § 844(i) .................................................................... 4, 9, 12, 14

18 U.S.C. § 921(a) .......................................................................................... 16

18 U.S.C. § 924(c) ..................................................................................... passim

18 U.S.C. § 924(e) .......................................................................................... 18

8 U.S.C. § 1101(a) .......................................................................................... 18

**Other Authorities**

S. Rep. No. 225, 98th Cong., 2d Sess. 313 (1983) .......................................................... 8

U.S.S.G. § 4B1.2(a)(1)..................................................................................... 9

**Rules**

Fed. R. Crim. P. 12(b).......................................................................................... 5

Fed. R. Crim. P. 7(c).................................................................................... 4, 10

The Government respectfully submits this memorandum of law in opposition to the defendant's pretrial motion filed on July 17, 2018 (Dkt. No. 20), which seeks dismissal of Count Six of Indictment 18 Cr. 16 (RJS) (the "Indictment").  As set forth below, the defendant's motion is meritless and foreclosed by controlling Second Circuit precedent.  The motion should be denied without a hearing.

## BACKGROUND

### I.    Offense Conduct

The defendant bombed a crowded subway terminal in the heart of New York City for and in the name of the Islamic State of Iraq and al-Sham ("ISIS").  In the early morning hours of Monday, December 11, 2017, the defendant strapped a homemade pipe bomb to his body and traveled by subway from Brooklyn, where he lived, to a subway terminal (the "Subway Terminal") underneath the Port Authority Bus Terminal at West 42nd Street and Eighth Avenue in Manhattan.  (Complaint (Dkt. No. 1) ¶ 9(a)).  At approximately 7:20 a.m., during the Monday morning rush hour, the defendant detonated the pipe bomb inside the Subway Terminal.  (*Id.*).  Surveillance footage from cameras in the Subway Terminal shows the defendant walking through the crowded tunnel, detonating the pipe bomb, and falling to the ground after the explosion.  (*Id.* ¶ 10).  The footage also shows dozens of commuters in the Subway Terminal scattering as the bomb explodes.

Shortly after the blast, responding law enforcement officers discovered the defendant lying on the ground inside the tunnel, and the defendant was taken into custody.  (*Id.* ¶¶ 9(b)-(c)).  Law enforcement officers discovered the remnants of the pipe bomb on the defendant's body, including a nine-volt battery in the defendant's pocket, wires connected to the battery running underneath his jacket, and pieces of Christmas tree lightbulbs attached to the wires.  (*Id.* ¶ 9(c)).

The battery, wires, and Christmas tree lightbulbs functioned as the power source and trigger for the device. Law enforcement also recovered fragments of the pipe bomb's components—including shards of metal pipe, a metal end cap, metal screws, and wires and wire connectors—scattered throughout the tunnel. (*Id.*).

The defendant waived his *Miranda* rights and agreed to speak with law enforcement officers following his arrest. (*Id.* ¶ 11). The defendant stated, in substance and among other things, that he had been inspired by ISIS to carry out the bombing, that he "did it for the Islamic State," and that he had carried out the attack in part because of the United States' policies in the Middle East. (*Id.* ¶¶ 11(b), (e)). The defendant described posting a statement on his Facebook page, as he traveled to the Subway Terminal to carry out the attack, that read, "Trump you failed to protect your nation," along with a statement intended to convey that he had carried out the attack in the name of ISIS. (*Id.* ¶ 11(g)). The defendant further admitted that he had chosen a busy weekday morning for his attack in order to terrorize as many people as possible. (*Id.* ¶ 11(e)). To that end, the defendant had filled the pipe bomb—which he had built in his Brooklyn apartment about one week prior to the attack—with metal screws, which he believed would cause maximum damage. (*Id.* ¶¶ 11(c)-(d)). The defendant's radicalization began in 2014, when he started viewing pro-ISIS materials online, including a video instructing that if supporters of ISIS were unable to travel overseas to join ISIS, they should carry out attacks in their homelands. (*Id.* ¶ 11(f)). About a year before the attack, the defendant began researching online how to build improvised explosive devices. (*Id.*)

Law enforcement officers conducted a judicially authorized search of the defendant's Brooklyn apartment shortly after the December 11 attack. (*Id.* ¶ 12). During that search, officers recovered, among other things, materials consistent with those the defendant had used to

2

construct the pipe bomb, including metal pipes, wires, pieces of Christmas tree lights, and metal screws. (*Id.* ¶¶ 12(a)-(c)). Officers also recovered the defendant's passport, which contained the following statement scrawled in all capital letters: "O AMERICA, DIE IN YOUR RAGE." (*Id.* ¶ 12(d)). Officers found that same message written inside a cardboard box in the defendant's apartment; the cardboard box also contained metal screws consistent with those found in the Subway Terminal following the defendant's attack. Finally, law enforcement recovered a laptop from the defendant's residence that contained a substantial volume of ISIS and terrorism-related materials, including (1) dozens of ISIS propaganda videos, including videos distributed by al-Hayat Media Center (an ISIS media outlet), depicting ISIS fighters engaging in violent combat operations such as suicide bombings and beheadings of captives; and (2) hundreds of lectures by radical jihadist leaders, including Anwar al-Awlaki, the now-deceased former leader of al Qaeda in the Arabian Peninsula.

While in custody in the days following his arrest, the defendant made additional, unprompted statements to law enforcement officers about his attack. For example, on December 14, 2017, the defendant told a law enforcement officer, "System is not working, think who will come after me," and repeatedly warned, "More is coming." On December 22, 2017, while incarcerated at the Metropolitan Correctional Center, the defendant began chanting "more is coming" to a correctional officer. He then told the officer: "you started this war, we will finish it. More is coming, you'll see."

## II.     The Charges

The Indictment charges the defendant in six counts, all of which stem from the defendant's perpetration of the December 11, 2017 attack:

- Count One: Providing and attempting to provide material support or resources to a designated foreign terrorist organization ("FTO"), namely, ISIS, in violation of 18 U.S.C. § 2339B;

- Count Two: Using and attempting to use a weapon of mass destruction, in violation of 18 U.S.C. § 2332a(a);

- Count Three: Bombing and attempting to bomb a place of public use and a public transportation system, in violation of 18 U.S.C. § 2332f(a)-(b);

- Count Four: Destroying and attempting to destroy property by means of explosive, in violation of 18 U.S.C. § 844(i);

- Count Five: Committing and attempting to commit a terrorist attack against a mass transportation system, in violation of 18 U.S.C. § 1992(a)-(c); and

- Count Six: Using and carrying a destructive device during and in relation to, and possessing a destructive device in furtherance of, the crimes of violence charged in Counts One through Five of the Indictment, in violation of 18 U.S.C. § 924(c).

**DISCUSSION**

## I.   Legal Standard for Motions to Dismiss Indictments

"Motions to dismiss indictments are disfavored." *United States* v. *Laurent*, 861 F. Supp. 2d 71, 109 (E.D.N.Y. 2011) (citing *United States* v. *De La Pava*, 268 F.3d 157, 165 (2d Cir. 2001)). "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling* v. *United States*, 418 U.S. 87, 117 (1974); *see also* Fed. R. Crim. P. 7(c). On a motion to dismiss an indictment, "[t]he allegations of an indictment are accepted as true." *United States* v. *Genovese*, 409 F. Supp. 2d 253, 255 (S.D.N.Y. 2005) (citing *United States* v. *Goldberg*, 756 F.2d 949, 950 (2d Cir. 1985)).

## II.   Count Six Is Properly Alleged and Legally Sound

The defendant moves to dismiss the § 924(c) charge alleged in Count Six of the Indictment, arguing that (1) the § 2339B material-support offense charged in Count One does not

4

qualify as a "crime of violence" for purposes of § 924(c) in light of the Supreme Court's recent decision in *Sessions* v. *Dimaya*, 138 S. Ct. 1204 (2018); and (2) Count Six fails to state an offense because it is not based on conduct separate from the predicate crimes of violence charged in Counts Two through Five.  (*See* Def. Mem. (Dkt. No. 21) at 2-11).

As explained below, the defendant's challenge to Count Six, which invokes principles of double jeopardy and multiplicity, is squarely foreclosed by multiple decisions of the Second Circuit, which has established that, based on the text and legislative history of § 924(c), the same conduct can both violate § 924(c) and constitute a predicate crime of violence underlying the § 924(c) charge.  Just last year, the defendant in another explosives-related terrorism case in this District, *United States* v. *Rahimi*, 16 Cr. 760 (RMB), filed a nearly identical motion challenging the § 924(c) counts in that case, and Judge Berman denied it.  The defendant's recycled version of that motion filed here is equally meritless and should also be denied.

The defendant's argument relating to Count One also fails, as § 924(c)(3)(B)'s definition of "crime of violence" is properly construed post-*Dimaya* such that Count One does qualify as a crime of violence.  But in any event, the Court need not reach that issue—which implicates questions concerning the validity and construction of § 924(c)(3)(B) in the wake of *Dimaya* that are currently pending before the Second Circuit—because Count Six is also predicated on several offenses in addition to Count One that the defendant concedes are crimes of violence for purposes of § 924(c), irrespective of *Dimaya*.

### A.     The Defendant's Challenge to Count Six Fails as a Matter of Well-Established Law

The defendant moves to dismiss Count Six, asserting that it "'fail[s] to state an offense.'" (Def. Mem. at 2 (quoting Fed. R. Crim. P. 12(b)(3)(B)(v))).  The motion relies on wholly inapposite authority.  While the defendant's arguments plainly sound in double jeopardy and

multiplicity, he avoids explicitly invoking those principles—perhaps because his contentions are foreclosed by binding precedent.  The text and history of § 924(c), as interpreted by the Second Circuit, are clear and controlling: Congress intended that the same conduct could violate § 924(c) and constitute a predicate crime of violence, and that defendants who engage in such conduct would receive separate, consecutive punishments for their crimes.  Accordingly, the defendant's motion to dismiss Count Six should be denied.

### 1.       Applicable Law

### a.       The Double Jeopardy Clause and Multiplicity

The Double Jeopardy Clause of the Fifth Amendment "protects a criminal defendant from multiple prosecutions as well as multiple punishments for the same criminal offense." *United States* v. *Mohammed*, 27 F.3d 815, 819 (2d Cir. 1994).  Double jeopardy challenges like the one at issue here are sometimes described in terms of "multiplicity."  *See, e.g.*, *United States* v. *Chacko*, 169 F.3d 140, 145 (2d Cir. 1999).  "An indictment is multiplicitous when it charges a single offense as an offense multiple times, in separate counts, when, in law and fact, only one crime has been committed."  *Id.*

However, "[i]t is well settled that the legislature may impose multiple punishments for the same conduct without violating the Double Jeopardy Clause, so long as it expresses its intent to do so clearly."  *Mohammed*, 27 F.3d at 819 ("Where the same conduct violates two statutory provisions, whether each violation is a separate offense is a question of legislative intent."); *see Chacko*, 169 F.3d at 146 ("[T]he touchstone is whether Congress intended to authorize separate punishments for the offensive conduct under separate statutes.").  As the *Mohammed* court explained, the test articulated in *Blockburger* v. *United States*, 284 U.S. 299 (1932), for determining whether two offenses are separate for double-jeopardy purposes—which looks to

whether each offense includes at least one unique element—"is 'a rule of statutory construction to help determine legislative intent' and 'is not controlling when the legislative intent is clear from the face of the statute or the legislative history.'"  27 F.3d at 819 (quoting *Garrett* v. *United States*, 471 U.S. 773, 778 (1985)).  Thus, when the legislative intent to impose multiple punishments for the same conduct is "clear from the face of the statute or the legislative history," the double jeopardy and multiplicity inquiry is concluded, and any challenge to the imposition of such punishments based on those principles necessarily fails.  *Garrett*, 471 U.S. at 779; *see also Mohammed*, 27 F.3d at 819; *accord United States* v. *Khalil*, 214 F.3d 111 (2d Cir. 2000).

### b.      Text and Legislative History of § 924(c)

Section 924(c) provides, in pertinent part:

> [A]ny person who, during and in relation to *any crime of violence* . . . (including a crime of violence . . . that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, *in addition to the punishment provided for such crime of violence*—[be punished pursuant to Sections 924(c)(1)(B)(ii) and 924(c)(1)(C)(ii)].

18 U.S.C. § 924(c)(1)(A) (emphasis added).  Section 924(c) further provides that "no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, *including any term of imprisonment imposed for the crime of violence*."  *Id.* § 924(c)(1)(D)(ii) (emphasis added); *see also United States* v. *Arline*, 835 F.3d 277, 281 (2d Cir. 2016) ("A 'second or subsequent' conviction under § 924(c) may be charged in the same indictment as the initial § 924(c) charge.").

Congress amended Section 924(c) in 1984, in response to Supreme Court decisions interpreting a prior version of the statute. *See Mohammed*, 27 F.3d at 820. In connection with the 1984 amendment, the Senate Judiciary Committee concluded that

> subsection 924(c) should be completely revised to ensure that *all persons who commit Federal crimes of violence . . . receive a mandatory sentence, without the possibility of the sentence being made to run concurrently with that for the underlying offense* or for any other crime . . . .

S. Rep. No. 225, 98th Cong., 2d Sess. 313 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3491 (emphasis added).

Based on the text and history of the statute, the Second Circuit has held:

> A review of the plain language of section 924(c) and its legislative history leads us to conclude that the section was intended to impose an additional, consecutive sentence upon a defendant who commits *any* federal crime of violence while using or carrying a firearm. The use of the phrases "any crime of violence" in section 924(c) and "all persons who commit Federal crimes of violence" in the Senate report unequivocally convey this message.

*Mohammed*, 27 F.3d at 819 (quoting 18 U.S.C. § 924(c)) (emphasis in original).

### 2. Argument

#### a. The Court Need Not Reach the Question of Whether Count One Is a Crime of Violence to Resolve the Defendant's Motion

As an initial matter, to resolve the defendant's motion, the Court need not reach the question of whether the material-support offense charged in Count One qualifies as a crime of violence under § 924(c)(3)(B) after *Dimaya*. The § 924(c) charge in Count Six is also predicated on other offenses alleged in the Indictment—for example, using a weapon of mass destruction, in violation of 18 U.S.C. § 2332a (Count Two); bombing a place of public use and a public transportation system, in violation of 18 U.S.C. § 2332f (Count Three); and committing a terrorist attack against a mass transportation system, in violation of 18 U.S.C. § 1992 (Count

Five)—that indisputably qualify as crimes of violence for purposes of § 924(c), and the defendant does not argue otherwise.  Each of those statutes includes as an element "the use, attempted use, or threatened use of physical force against the person or property of another," and therefore qualifies as a crime of violence under § 924(c)(3)(A), the validity of which is not in question.  *See* 18 U.S.C. §§ 2332a (elements include use, attempted use, or threatened use of weapon of mass destruction against persons or property), 2332f (elements include delivering, placing, discharging, or detonating an explosive or other lethal device, or attempting to do so, in, into, or against a place of public use or public transportation system), 1992 (elements include placing or attempting to place a destructive substance or device in, upon, or near specified types of property associated with mass transportation); *see also United States* v. *Guevara*, 408 F.3d 252, 259 (5th Cir. 2005) (holding that § 2332a is crime of violence under U.S.S.G. § 4B1.2(a)(1), which is similar to § 924(c)(3)(A), as "Section 2332a contains, as an element, the threatened use of a weapon of mass destruction").[1]

In short, even setting aside Count One solely for the sake of argument on the instant motion, the § 924(c) charge in Count Six is independently supported by other predicate crimes of violence alleged in the Indictment.  Thus, the only question that the Court needs to address is whether there is any merit to the defendant's argument that Count Six fails to state an offense on

---

[1] While the defendant does not dispute that 18 U.S.C. § 844(i) (Count Four) also qualifies as a crime of violence for purposes of § 924(c), the Government has not included that offense in the discussion above, as at least one court of appeals has concluded that § 844(i) does not qualify as a crime of violence under § 924(c)(3)(A), and that the offense qualifies as a crime of violence only under § 924(c)(3)(B), which the defendant here claims (incorrectly) is no longer valid after *Dimaya*.  *See United States* v. *Salas*, 889 F.3d 681, 684 (10th Cir. 2018) (reasoning that § 844(i)'s elements do not require use of force against property "of another").  Irrespective of whether the *Salas* panel's conclusion was correct, which the Government does not concede, there is no need to address that issue in connection with the instant motion, as the offenses charged in Counts Two, Three, and Five plainly qualify as crimes of violence under § 924(c)(3)(A), as discussed above.

double jeopardy/multiplicity grounds because it is not based on conduct "separate" from the conduct underlying the predicate crimes of violence. (*See* Def. Mem. at 5-11). As explained below, that argument is also meritless.

### b.   Count Six Properly Alleges a Violation of § 924(c)

Count Six is properly alleged in the Indictment because it tracks the language of § 924(c) and fairly informs the defendant of the charge against which he must defend, including by providing the defendant with sufficient notice of the predicate crimes underlying the § 924(c) charge. *See* Fed. R. Crim. P. 7(c); *Hamling*, 418 U.S. at 117.[2] The Indictment also alleges sufficiently that the defendant's use, carrying, and possession of the destructive device at issue occurred during, in relation to, and in furtherance of those predicate crimes of violence. *See* 18 U.S.C. § 924(c)(1)(A). Accordingly, Count Six meets the pleading requirements of Rule 7(c).

### c.   Congress Intended § 924(c) to Impose Sentences Separate from and Consecutive to Predicate Crimes of Violence

The defendant nevertheless asserts that the Court should dismiss Count Six because "using a bomb and committing the charged crimes of violence are not 'two separate acts.'" (Def. Mem. at 6 (quoting *Rodriguez-Moreno*, 526 U.S. at 280)). But the defendant's purported "two separate acts" requirement does not exist. *See, e.g.*, *United States* v. *Salameh*, 261 F.3d 271, 277-78 (2d Cir. 2001) ("[T]here is generally no constitutional bar to the imposition, within a

---

[2] Numerous other terrorism cases have involved § 924(c) charges predicated on offenses charged in this case. *See, e.g.*, *United States* v. *Rahimi*, 2017 U.S. Dist. LEXIS 96686, at *2-5 (S.D.N.Y. 2017) (predicate violations of Sections 2332a, 2332f, and 844(i)); *United States* v. *Yousef*, 327 F.3d 56, 83-84 (2d Cir. 2011) (predicate violations of Sections 2332a and 844(i)); *In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93, 107 (2d Cir. 2008) (predicate violations of Sections 2332a and 844(i)); *United States* v. *Reid*, 369 F.3d 619, 620 (1st Cir. 2004) (predicate violation of § 2332a); *United States* v. *Tsarnaev*, 157 F. Supp. 3d 57, 71 (D. Mass. 2016) (predicate violations of Sections 2332a, 2332f, and 844(i)).

single criminal proceeding, of multiple punishments for the same criminal conduct.").[3]  Instead, as discussed above, the salient question is whether § 924(c) and the predicate crimes of violence are "separate offense[s]"—not separate acts—which is "a question of legislative intent." *Mohammed*, 27 F.3d at 820-21 (rejecting double-jeopardy argument where predicate crime for § 924(c) charge was carjacking in violation of 18 U.S.C. § 2119).  As the Second Circuit has recognized, the unambiguous congressional intent reflected in the text and history of § 924(c) establishes that a § 924(c) charge is a separate offense in relation to the predicate crimes of violence underlying the § 924(c) charge, and the defendant's motion to dismiss Count Six therefore must be denied.

In *Salameh*, the Second Circuit established that the argument advanced here, "which refers to what one might call the 'vertical' relationship between each § 924(c) count and its underlying crime of violence, has been foreclosed by a clear act of Congress," *i.e.*, the 1984 amendment to § 924(c) discussed above, *see supra* at 8.  *Salameh*, 261 F.3d at 278.  Also fatal to the defendant's argument is *United States* v. *Khalil*, 214 F.3d 111 (2d Cir. 2000).  In that case, the Second Circuit rejected a defendant's claim that his conviction under § 924(c) violated the Double Jeopardy Clause where the predicate crime of violence was a violation of 18 U.S.C. § 2332a—the statute charged in Count Two of the Indictment in this case.  *Khalil*, 214 F.3d at 120-21.  As in *Salameh*, the Second Circuit reasoned that "simply because two criminal statutes may be construed to proscribe the same conduct . . . does not mean that the Double Jeopardy

---

[3] In an effort to suggest something to the contrary, the defendant lifts isolated *dicta* out of context from *Rosemond* v. *United States*, 134 S. Ct. 1240, 1247 (2014), and *Rodriguez-Moreno*.  (*See* Def. Mem. at 5-6).  Those cases examined § 924(c) in contexts wholly distinct from the present circumstances.  *Rosemond* addressed aiding and abetting liability under 18 U.S.C. § 2, *see* 134 S. Ct. at 1245, and *Rodriguez-Moreno* related to venue under § 924(c), *see* 526 U.S. at 282. Neither case relates to the double-jeopardy holdings that foreclose the defendant's motion.

Clause precludes the imposition, in a single trial, of cumulative punishments pursuant to those statutes." *Id.* at 118 (citing *Missouri* v. *Hunter*, 459 U.S. 359, 368 (1983)).[4]  The Second Circuit reiterated that "[w]here . . . a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the same conduct under *Blockburger* . . . a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Id.* at 119; *accord Mohammed*, 27 F.3d at 819.  The *Khalil* court unambiguously concluded that § 924(c)'s express provisions requiring imposition of a sentence "in addition" to any punishment imposed for a predicate crime of violence, 18 U.S.C. § 924(c)(1)(A), constituted "explicit Congressional directives" and therefore left "no doubt" that the statute establishes an "offense that is *distinct from the underlying crime of violence*." *Khalil*, 214 F.3d at 120 (emphasis added); *accord United States* v. *Yousef*, 327 F.3d 56, 142 (2d Cir. 2011) (relying on *Salameh* to reject double-jeopardy argument based on § 924(c)).  The Second Circuit's decisions in *Mohammed*, *Salameh*, and *Khalil* squarely control here, and foreclose the defendant's motion.[5]

---

[4] Quoting *Khalil*, the defendant's brief twice asserts that Congress "'obviously did not intend the crime of violence to be merged into the firearm offense.'"  (Def. Mem. at 5, 7 (quoting 214 F.3d at 121)).  That is correct, but in no way helpful to his argument.  As discussed above, Congress "obviously"—and explicitly—provided for separate crimes and punishments, rather than merger, for violations of § 924(c) and predicate crimes of violence.

[5] Courts in other circuits have reached the same conclusion, further underscoring the meritless nature of the defendant's motion.  *See, e.g.*, *United States* v. *Mathews*, 36 F.3d 821, 823 (9th Cir. 1994) (reasoning that "Congress intended to punish both the crime of violence effected by the use of the bomb under 18 U.S.C. § 844(i) and, cumulatively, to add the punishment for carrying the bomb in relation to this crime of violence" pursuant to § 924(c)); *United States* v. *Holdridge,* 30 F.3d 134, 1994 WL 399526, at *3 (6th Cir. 1994) (unpublished opinion) ("[T]he imposition of consecutive sentences under § 844(i) and § 924(c) does not violate the Double Jeopardy Clause."); *United States* v. *Quigley*, 798 F. Supp. 451, 457-58 (W.D. Mich. July 14, 1992) (concluding, based on legislative history of § 924(c), that "Congress clearly intended cumulative punishment with respect to *all* crimes of violence involving dangerous weapons, and therefore intended that violations of section 844(i) and 924(c) would be treated as separate offenses").

### d.  Non-Binding Interpretive Canons Afford No Basis for Relief

In light of the Second Circuit's holdings interpreting § 924(c), the interpretive canons cited by the defendant offer him no refuge.  (*See* Def. Mem. at 8-11).  "[C]anons are not mandatory rules," and "other circumstances evidencing congressional intent can overcome their force." *Chickasaw Nation* v. *United States*, 534 U.S. 84, 94 (2001).  For example, the Supreme Court's "preference for avoiding surplusage constructions is not absolute"; rather, it "prefer[s] the plain meaning since that approach respects the words of Congress." *Lamie* v. *U.S. Trustee*, 540 U.S. 526, 536 (2004).  In *Mohammed*, 27 F.3d at 820-21, the Second Circuit expressly rejected the defendant's argument that § 924(c) counts "violate the rule that 'a more specific statute will be given precedence over a more general one'" (Def. Mem. at 8 (quoting *Corley* v. *United States*, 556 U.S. 303, 316 (2009))).  Finally, the rule of lenity also has no application here, as § 924(c) is unambiguous with respect to the issue presented.  *See, e.g.*, *United States* v. *Valle*, 807 F.3d 508, 540 (2d Cir. 2015) ("[W]here statutory . . . provisions unambiguously cover the defendant's conduct . . . the rule of lenity does not come into play." (internal quotation marks omitted)).  Accordingly, the defendant's scattershot references to various canons of interpretation do nothing to save his motion, which fails under the clear and controlling Second Circuit precedent discussed above.

### e.  The Predicate Crimes of Violence Involved "Separate Acts"

As explained above, the defendant's argument is little more than an attempted end run around a line of controlling Second Circuit precedent—including *Mohammed*, *Salameh*, and *Khalil*—that squarely forecloses his motion.  But even on its face, the defendant's position does not withstand even cursory scrutiny.  Contrary to the defendant's conclusory assertion otherwise, the predicate crimes of violence underlying Count Six do allege—and require the Government to

prove—additional acts and conduct beyond that required to establish the § 924(c) violation charged in Count Six.  For example:

- Count Two requires proof that the defendant used or attempted to use a weapon of mass destruction against "persons or property" located "within the United States," *see* 18 U.S.C. § 2332a(a)(2);

- Count Three requires proof that the defendant "place[d], discharge[d], or detonate[d]" a bomb (or attempted to do so) (1) in a "place of public use," (2) with intent to cause either "death or serious bodily injury" or "extensive destruction . . . likely to result in major economic loss," and (3) under certain additional circumstances, such as the "perpetrator is a national of another state," *see* 18 U.S.C. §§ 2332f (a), (b)(1); and

- Count Five requires proof that the defendant (1) placed or attempted to place a destructive device in, upon, or near "a mass transportation vehicle" with "intent to endanger the safety of any person, or with a reckless disregard for the safety of human life," (2) placed or attempted to place a destructive device in, upon, or near certain specified facilities used in connection with "the operation of . . . a mass transportation vehicle" with the intent or knowledge that doing so would damage a mass transportation vehicle, or (3) committed an act with "intent to cause death or serious bodily injury" to any person located on specified types of property relating to mass transportation, *see* 18 U.S.C. §§ 1992(a)(2), (a)(4), (a)(7).

Count Six, in turn, charges the defendant with possessing, carrying, and using a destructive device in connection with the distinct activities alleged in the underlying crimes of violence.  *See Salameh*, 261 F.3d at 279 (affirming convictions under Sections 924(c) and 844 and noting "the separate, and separately culpable, nature of defendants' use and carriage of the bomb"); *Mathews*, 36 F.3d at 823 ("[The defendant's] action in transporting . . . the bomb to the alley where it was placed is the fact which makes him liable under [§ 924(c)] [and] it is a fact distinct from use of the bomb which makes him liable under 18 U.S.C. § 844(i).").  Accordingly, in addition to being legally foreclosed by the controlling precedent discussed above, even the factual premise of the defendant's challenge to Count Six is baseless.

14

### f.     A Nearly Identical Motion Was Recently Rejected by Another Court in This District

The defendant's motion recycles a nearly identical one that was recently rejected in another terrorism case in this District, *United States* v. *Rahimi*, No. 16 Cr. 760 (RMB) (S.D.N.Y.) ("*Rahimi*").  Rahimi was charged (and ultimately convicted after trial) with various offenses, including under § 924(c), stemming from his bombing and attempted bombing of the Chelsea neighborhood of Manhattan in fall 2016.  The two § 924(c) counts in *Rahimi* (which related to the two bombs Rahimi transported, planted, and detonated or attempted to detonate in Manhattan) were predicated on violations of Sections 2332a, 2332f, and 844(i)—that is, the same statutes charged in Counts Two, Three, and Four of the Indictment in this case.[6]  Rahimi filed a pretrial motion to dismiss the § 924(c) counts, which advanced a "separate acts" argument nearly identical to the argument advanced by the defendant here.  *See Rahimi*, Dkt. No. 60 at 8-14.[7]

Judge Berman rejected that argument, stating that "[c]riminal charges which have been sustained in cases analogous to the Rahimi case compel this result," and citing *Salameh* and *Khalil*, among other cases.  *United States* v. *Rahimi*, 2017 U.S. Dist. LEXIS 96686, at *2 (S.D.N.Y. 2017).  As discussed above, those cases compel the same result here.  After disposing of Rahimi's baseless argument sounding in "double jeopardy and/or multiplicit[y]," the *Rahimi* court found that the § 924(c) counts were properly alleged, as they "track the language of the federal statute(s) pursuant to which Defendant is charged," "state the elements of the crimes

---

[6] The *Rahimi* indictment did not include a charge under 18 U.S.C. § 1992.

[7] As discussed above, the defendant's motion also includes, in addition to the "separate acts" argument sounding in double jeopardy from Rahimi's motion, an argument that § 2339B (Count One of the Indictment) is not a crime of violence for purposes of § 924(c).  Rahimi's motion did not include that argument—the *Rahimi* indictment did not involve a charge under § 2339B, and Rahimi's motion also predated the Supreme Court's decision in *Dimaya*.

15

charged, including the nature, time and place of the alleged offenses," and "fairly inform[] [the] defendant of the charge[s] against which he must defend." *Id.* at *3. Accordingly, Judge Berman denied Rahimi's motion, concluding that the § 924(c) counts "readily withstand the Defense motion to dismiss." *Id.* at *4-5. The defendant's nearly identical motion in this case should similarly be denied. While the Court need not reach the defendant's argument relating to Count One to resolve his motion, that argument also fails, as explained below.

### B. Count One Is a Crime of Violence and, in Any Event, the Court Need Not Reach That Issue

#### 1. Background: § 924(c), § 2339B, and *Dimaya*

Section 924(c) imposes a mandatory consecutive term of imprisonment when a defendant uses or carries a firearm during, or possesses a firearm in furtherance of, a drug trafficking crime or "crime of violence." 18 U.S.C. § 924(c)(1)(A). When, as in this case, the firearm is a "destructive device," which is defined to include any "explosive" or "bomb," *id.* § 921(a)(4), the mandatory minimum consecutive term of imprisonment is 30 years. *Id.* § 924(c)(1)(B)(ii). The statute defines "crime of violence" as a federal felony

> (A)   [that] has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B)   that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

*Id.* § 924(c)(3)(A)-(B). In this Circuit, the language of subsection (A), which focuses on whether the elements of the offense include the use of force, has been referred to as the "Force Clause," while the language of subsection (B), which focuses on whether the offense involved a substantial risk of force, has been referred to as the "Risk-of-Force Clause." *See United States* v. *Hill*, 890 F.3d 51, 2018 WL 2122417 (2d Cir. May 9, 2018).

16

Under the Second Circuit's current precedents, whether a § 924(c) count's predicate violation qualifies as a "crime of violence" (under either clause of § 924(c)(3)) is a question of law for the court, determined by applying the "categorical approach."  *Hill*, 890 F.3d at 55; *see United States* v. *Ivezaj*, 568 F.3d 88, 95 (2d Cir. 2009); *United States* v. *Acosta*, 470 F.3d 132, 134-35 (2d Cir. 2006).  "Under the categorical approach, courts identify the minimum criminal conduct necessary for conviction under a particular statute," examining only the statutory definition of the offense, and not the case-specific facts of the defendant's conduct in committing the offense.  *Hill*, 890 F.3d at 55 (internal quotation marks omitted).

The material-support statute charged in Count One, 18 U.S.C. § 2339B, criminalizes "knowingly provid[ing] material support or resources to a foreign terrorist organization."  18 U.S.C. § 2339B(a)(1).  The term "material support or resources" is defined as:

> any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials.

*Id.* § 2339A(b)(1).

To date, district courts that have considered the question of whether a violation of § 2339B qualifies as a "crime of violence" have found that it does, under the Risk-of-Force Clause of § 924(c)(3)(B) and the parallel residual clause of 18 U.S.C. § 16(b).  *See, e.g.*, *United States* v. *Doe*, 145 F. Supp. 3d 167, 174, 179-82 (E.D.N.Y. 2015) (applying categorical approach and concluding that § 2339B qualifies as a crime of violence under § 16(b) for purposes of the Juvenile Justice and Delinquency Prevention Act, and noting that, while the Second Circuit has not addressed whether providing material support to an FTO qualifies as a "crime of violence," "district courts that have considered the issue have found that it does") (citing cases); *United*

17

*States* v. *Viglakis*, 2013 WL 4477023, at *7 (S.D.N.Y. 2013) (identifying § 2339B as predicate crime of violence underlying § 924(c) charge); *United States* v. *Goba*, 240 F. Supp. 2d 242, 250-51 (W.D.N.Y. 2003) (applying categorical approach and concluding that "providing material support or resources to a foreign terrorist organization involves a substantial risk that physical force against the person or property of another may occur," and that "§ 2339B is therefore a 'crime of violence'" for purposes of Bail Reform Act); *United States* v. *Lindh*, 212 F. Supp. 2d 541, 578-82 (E.D. Va. 2002) (concluding, based on categorical approach, that both substantive and conspiracy violations of § 2339B "are, by their nature, crimes of violence" under § 924(c)(3)(B), as "providing material support and resources to a terrorist organization creates a substantial risk that the violent aims of the terrorists will be realized" and "[v]iolence, therefore, is intrinsic to the crimes").

In *Dimaya*, decided on April 17, 2018, the Supreme Court held that the definition of a "crime of violence" in § 16(b)—the language of which is nearly identical to the Risk-of-Force Clause in § 924(c)(3)(B)—is unconstitutionally vague as incorporated into the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(F). 138 S. Ct. at 1212, 1223. The *Dimaya* Court determined that "[t]wo features" on which it had previously relied to invalidate the "residual clause" of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii),[8] were also present in § 16(b). *Dimaya*, 138 S. Ct. at 1216 (quoting *Johnson* v. *United States*, 135 S. Ct. 2551, 2557 (2015)). The Court explained that § 16(b), like ACCA's residual clause, "calls for a court to identify a crime's 'ordinary case' in order to measure the crime's risk" and creates "uncertainty about the level of risk that makes a crime 'violent.'" *Id.* at 1215.

---

[8] ACCA's residual clause defined a "violent felony" to include a felony that "involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii).

18

**2.** **Count One Qualifies as a Crime of Violence Pursuant to the "Underlying-Conduct" Approach Properly Applied to § 924(c)(3)(B) After *Dimaya*, But the Court Need Not Reach That Issue to Resolve the Defendant's Motion**

The defendant argues that *Dimaya* requires invalidation of § 924(c)(3)(B)'s Risk-of-Force Clause, such that § 2339B no longer qualifies as a crime of violence because that statute does not have as an element "the use, attempted use, or threatened use of physical force against the person or property of another," and therefore does not constitute a crime of violence under the remaining Force Clause of § 924(c)(3)(A). (Def. Mem. at 3-4). But *Dimaya* does not require invalidation of § 924(c)(3)(B). Instead, the Supreme Court's decision permits the application of an "underlying-conduct" approach that looks to the defendant's actual conduct, in lieu of the categorical approach, to determine whether an offense qualifies as a crime of violence under the Risk-of-Force Clause. Pursuant to the underlying-conduct approach, the § 2339B offense charged in the Indictment—which is based on the defendant's perpetration of a terrorist bombing—unquestionably qualifies as a crime of violence. The defendant does not and cannot argue otherwise.

The Supreme Court did not hold in *Dimaya* that § 16(b) requires a categorical approach, and left open that question for § 924(c)(3)(B). A four-Justice plurality of the Court viewed § 16(b)—which, unlike § 924(c)(3)(B), is often applied to classify a conviction previously entered by another court in an otherwise unrelated prior proceeding—as "[b]est read" to require a categorical approach not dependent on the particular facts of a case. *Dimaya*, 138 S. Ct. at 1217 (opinion of Kagan, J.). The plurality observed, however, that the Government had not asked the Court in *Dimaya* to abandon the categorical approach in the § 16(b) context. *Id.* And the *Dimaya* majority went out of its way to emphasize that the "substantial risk" language in § 16(b) raised constitutional concerns only when assessed under the categorical approach. *Id.* at 1215-

19

16.  Notably, the Court disavowed the view that the substantial-risk feature "is alone problematic," and emphasized that "'we do not doubt' the constitutionality of applying § 16(b)'s 'substantial risk [standard] to real-world conduct.'"  *Id.* at 1215 (quoting *Johnson*, 135 S. Ct. at 2561).

Justice Gorsuch, concurring in part and concurring in the judgment, stressed that the Government had conceded the applicability of the categorical approach in *Dimaya*, and expressed his willingness to consider "in another case" whether "precedent and the proper reading of language" like § 16(b)'s in fact requires a categorical analysis.  *Id.* at 1233 (opinion of Gorsuch, J.).  And Justice Thomas, joined by Justices Kennedy and Alito, filed a separate dissenting opinion expressing the view that the Court "should abandon [the categorical] approach" entirely under § 16(b).  *Id.* at 1242 (opinion of Thomas, J.).

In light of *Dimaya*, courts in this Circuit should reconsider the categorical approach previously applied to the determination of whether an offense qualifies as a crime of violence under the Risk-of-Force Clause, and adopt in its place the underlying-conduct approach that many courts have espoused since *Johnson* and that the opinions in *Dimaya* suggest could constitute a valid replacement for the categorical approach.[9]  A non-categorical approach, which looks to the defendant's actual conduct in the case at hand rather than the "ordinary case" of his

---

[9] Some of the many opinions since *Johnson* questioning the need for the categorical approach in § 924(c) cases include *United States* v. *St. Hubert*, 883 F.3d 1319, 1334-37 (11th Cir. 2018); *United States* v. *Cravens*, 2017 WL 6559798, at *6-8 (10th Cir. 2017) (O'Brien, J., concurring); *United States* v. *Eshetu*, 863 F.3d 946, 960-61 (D.C. Cir. 2017) (Millet, J., concurring in part and in judgment); *Ovalles* v. *United States*, 861 F.3d 1257, 1265-66 (11th Cir. 2017); *In re Irby*, 858 F.3d 231, 234 (4th Cir. 2017); *United States* v. *Galati*, 844 F.3d 152, 154-55 (3d Cir. 2016), *cert. denied*, 138 S. Ct. 636 (2018); *United States* v. *Rodriguez*, 2018 WL 1744734, at *3 (M.D. Pa. 2018); *United States* v. *Henderson*, 2017 WL 3820960, at *3-6 (M.D. Ga. 2017); *United States* v. *Hernandez*, 228 F. Supp. 3d 128, 131 (D. Me. 2017); and *United States* v. *Correia*, 2017 WL 80245, at *1 n.1 (D. Mass. 2017).

crime, makes particular sense in the context of § 924(c)(3)(B). Conviction under § 924(c) requires a jury to find (or the defendant to admit through a plea) that the defendant committed a specified crime of violence with a sufficient nexus to his use, carrying, or possession of a firearm, *United States* v. *Rodriguez-Moreno*, 526 U.S. 275, 280 (1999), which inherently requires a jury's consideration of, and determinations about, the unlawful course of conduct charged as a "crime of violence."

Unlike § 16(b) or ACCA's residual clause, § 924(c)(3)(B)'s definition of a "crime of violence" is never applied to a prior conviction, the specific facts of which may not be before the court. Section 924(c) instead employs the term "crime of violence" to describe the conduct involved in the present offense charged against the defendant. *See* 18 U.S.C. § 924(c)(1)(A); *Galati*, 844 F.3d at 155 (holding that categorical approach does not apply to § 924(c) for that very reason); *St. Hubert*, 883 F.3d at 1335 (§ 924(c) prosecution necessarily involves a "developed factual record"); *cf. Dimaya*, 138 S. Ct. at 1214 ("[W]e do not doubt the constitutionality of laws that call for the application of a qualitative standard such as 'substantial risk' to real-world conduct." (quoting *Johnson*, 135 S. Ct. at 2561)); *Johnson*, 135 S. Ct. at 2561 (noting that "dozens of federal and state criminal laws" use terms such as "substantial risk," and that "almost all" of them "require gauging the riskiness of conduct in which an individual defendant engages *on a particular occasion*" (emphasis in original)).

It follows that, where a § 924(c) charge relies on the Risk-of-Force Clause, whether the defendant's underlying conduct meets that test is a mixed question of law and fact that can and should be resolved by a jury at trial or admitted by the defendant in connection with a guilty plea. *See United States* v. *Gaudin*, 515 U.S. 506, 513, 522-23 (1995) (noting that, with the exception of "pure questions of law," "[t]he Constitution gives a criminal defendant the right to

21

have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged" (emphasis omitted)).  This approach eliminates the vagueness concerns identified in *Dimaya* by ensuring that the specifics of the crime actually committed by the defendant—rather than some hypothetical version of the offense—are presented to and found beyond a reasonable doubt by the jury.  Such an approach also comports with modern interpretations of the Sixth Amendment jury trial right, which directs that fact-bound aspects of criminal offenses be determined by the jury.  *See Apprendi* v. *New Jersey*, 530 U.S. 466, 490 (2000) (holding that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt").  Adopting the underlying-conduct approach for the Risk-of-Force Clause is also consistent with the canon of constitutional avoidance, which obligates a court "to construe [a] statute to avoid [constitutional] problems" if it is "fairly possible" to do so. *See INS* v. *St. Cyr*, 533 U.S. 289, 300 (2001) (internal quotation marks omitted).

Importantly, failing to find a constitutionally valid construction of the Risk-of-Force Clause would have real-world consequences that cannot be ignored.  Operating by itself, a categorical approach to the Force Clause of § 924(c)(3)(A) based on the elements of the statute, if not tempered by the availability of a valid Risk-of-Force Clause applying to the actual facts at hand, risks effectively immunizing from § 924(c) liability those who commit heinously violent crimes like murder and even—as in this case—terrorist bombings in the course of violating a variety of federal statutes, including § 2339B.  A determination that a person who provides support to a violent terrorist organization like ISIS by bombing a crowded subway terminal in Manhattan somehow has not committed a "crime of violence"—which is what accepting the defendant's challenge to Count One would mean—would be difficult to square with any

22

semblance of logic and would subvert the purposes underlying § 924(c). *See United States* v. *Walker*, 473 F.3d 71, 78 (3d Cir. 2007) ("Congress's 'overriding purpose' in passing Section 924(c) 'was to combat the increasing use of guns to commit federal felonies.'" (quoting *Simpson* v. *United States*, 435 U.S. 6, 10 (1978)); *United States* v. *Doctor*, 842 F.3d 306, 313 (4th Cir. 2016) (Wilkinson, J., concurring) ("The alluring theoretical terminology of the categorical approach has too often served to isolate [judges] in a judicial bubble, sealed conveniently off from the real-life dangers that confront American citizens in their actual lives."). Adopting the workable and constitutional underlying-conduct approach avoids that untenable result.

In sum, construing § 924(c)(3)(B)'s Risk-of-Force Clause to require that the determination of whether an offense qualifies as a "crime of violence" under that provision be based on the defendant's actual conduct comports with the text and context of the statute, is consistent with *Dimaya*, is supported by the canon of constitutional avoidance, and accords with logic and the policy underlying § 924(c). The Government has briefed this issue more fully in an appeal pending in the Second Circuit. *See* Gov't Supp. Br., *United States* v. *Barrett*, No. 14-2641 (2d Cir.), filed May 4, 2018. A copy of the Government's supplemental brief in *Barrett* is attached hereto as Exhibit A, and the Government's arguments set forth in that brief are incorporated by reference herein.

As explained in the Government's supplemental brief in *Barrett* (*see* Ex. A at 6-8), although the Second Circuit's existing precedents applied the categorical approach to § 924(c)(3)(B), in light of *Dimaya*, the Second Circuit may reconsider that analysis without in banc proceedings, and similarly nothing precludes this Court from addressing this issue. *See United States* v. *Gill*, 748 F.3d 491, 502 n.8 (2d Cir. 2014) ("[I]f there has been an intervening

23

Supreme Court decision that casts doubt on our controlling precedent, one panel of this Court may overrule a prior decision of another panel." (internal quotation marks omitted)); *United States* v. *Martoma*, 869 F.3d 58, 68-69 (2d Cir. 2017) ("Even if the effect of a Supreme Court decision is subtle, it may nonetheless alter the relevant analysis fundamentally enough to require overruling prior, inconsistent precedent." (internal quotation marks omitted)); *see also Shi Liang Lin* v. *U.S. Dep't of Justice*, 494 F.3d 296, 310 (2d Cir. 2007) ("While *stare decisis* is undoubtedly of considerable importance to questions of statutory interpretation, the Supreme Court ha[s] never applied *stare decisis* mechanically to prohibit overruling . . . earlier decisions determining the meaning of statutes. We should not do so either." (internal quotation marks and citation omitted)). Since *Dimaya*, district courts in other circuits that have considered whether the Risk-of-Force Clause requires application of a categorical approach have reached varying results. *See, e.g.*, *United States* v. *Chavez*, 2018 WL 3609083, at *9-17 (N.D. Cal. 2018) (concluding that categorical approach applies to § 924(c)(3)(B) and that clause is therefore unconstitutionally vague); *Chapman* v. *United States*, 2018 WL 3470304, at *11-14 (E.D. Va. 2018) (concluding that § 924(c)(3)(B) is properly reinterpreted to require application of underlying-conduct approach, and that *Dimaya* therefore does not invalidate that clause).[10]

---

[10] The district court in *Chapman* also rejected the defendant's argument that existing Fourth Circuit precedents—which, like existing Second Circuit precedents, applied the categorical approach to § 924(c)(3)(B)—prevented the court from interpreting that clause to require a conduct-specific approach. 2018 WL 3470304, at *12 n.14 (concluding that although Fourth Circuit has applied categorical approach to § 924(c)(3)(B), "it did so before *Dimaya* brought to light the constitutional concerns with such an interpretation," such that, "at the most, these Fourth Circuit cases stand for the proposition that the [categorical] approach was the best interpretation of § 924(c)(3)(B) before *Johnson* and *Dimaya*," and "[b]ecause the inquiry before [the district court] is materially different than the inquiry engaged in by the Fourth Circuit in [its existing precedents], these cases do not foreclose [the district court] from adopting a conduct-specific approach to the residual clause [of § 924(c)(3)(B)]). The same is true here.

In any event, the Court need not reach the issue of whether Count One qualifies as a crime of violence, because the § 924(c) charge in Count Six is also predicated on other offenses alleged in the Indictment that indisputably qualify as crimes of violence for purposes of § 924(c) under the Force Clause, and the defendant does not argue otherwise. *See supra* at 8-10.  As discussed above, the defendant's argument that Count Six nonetheless fails on double-jeopardy grounds is meritless, and his motion therefore fails as a matter of law.

**CONCLUSION**

For the foregoing reasons, the defendant's motion to dismiss Count Six of the Indictment should be denied without a hearing.

Dated: August 7, 2018
      New York, New York

                  Respectfully submitted,

                  GEOFFREY S. BERMAN
                  United States Attorney

By:                /s/
                  Shawn G. Crowley/Rebekah Donaleski/George D. Turner
                  Assistant United States Attorneys
                  212-637-1034/2423/2562

25