# 14-2641

## United States Court of Appeals

### FOR THE SECOND CIRCUIT
### Docket No. 14-2641

◄—◆◆►—►

UNITED STATES OF AMERICA,

*Appellee*,

—v.—

DWAYNE BARRETT, also known as Sealed Defendant 3, also known as Tall Man,

*Defendant-Appellant*,

FAHD HUSSAIN, also known as Ali, also known as Moe, TAMESHWAR SINGH, also known as Sealed Defendant 5, SHEA DOUGLAS, JERMAINE DORE, also known as St. Kitts, also known as Blaqs, TAIJAY TODD, also known as Sealed Defendant 4, also known as Biggs, DAMIAN CUNNINGHAM, also known as Jaba,

*Defendants.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## SUPPLEMENTAL BRIEF FOR
## THE UNITED STATES OF AMERICA

GEOFFREY S. BERMAN,
*United States Attorney for the Southern District of New York,
Attorney for the United States of America.*
One St. Andrew's Plaza
New York, New York 10007
(212) 637-2200

KARL METZNER,
MICHAEL D. MAIMIN,
  *Assistant United States Attorneys,
Of Counsel.*

**TABLE OF CONTENTS**

PAGE

Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

POINT I—The Current Categorical Approach and
      Grounds for Panel Reconsideration . . . . . . . . . .  6

POINT II—Section 924(c)(3)(B) Should Be
      Interpreted To Require An Underlying-
      Conduct Approach. . . . . . . . . . . . . . . . . . . . . . .  8

    A.   The Text and Context of § 924(c)(3)(B)
         Support An Underlying-Conduct
         Approach . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

    B.   The Reasons For Applying The
         Categorical Approach To Other Statutes
         Do Not Apply To § 924(c)(3)(B) . . . . . . . . .  14

POINT III—The Failure to Ask The Jury to Find
      that the Conspiracy to Commit Hobbs Act
      Robbery in Count One Was A "Crime of
      Violence" Was Demonstrably Harmless . . . . .  22

    A.   Standard of Review. . . . . . . . . . . . . . . . . . .  22

    B.   Discussion . . . . . . . . . . . . . . . . . . . . . . . . . .  25

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  30

Case 14-2041, Document 225, 05/04/2015, 2295470, Page3 of 39

ii

PAGE

# TABLE OF AUTHORITIES

*Cases*:

*Apprendi v. New Jersey*,
530 U.S. 466 (2000). . . . . . . . . . . . . . . . . . . . . . . 18

*Ayotte v. Planned Parenthood*,
546 U.S. 320 (2006). . . . . . . . . . . . . . . . . . . . . . . 19

*Chambers v. United States*,
555 U.S. 122 (2009). . . . . . . . . . . . . . . . . . . . . . . 19

*Corley v. United States*,
556 U.S. 303 (2009). . . . . . . . . . . . . . . . . . . . . . . 12

*Estate of Cowart v. Nicklos Drilling Co.*,
505 U.S. 469 (1992). . . . . . . . . . . . . . . . . . . . . . . 10

*In re Irby*,
858 F.3d 231 (4th Cir. 2017) . . . . . . . . . . . . . . . . 18

*INS v. St. Cyr*,
533 U.S. 289 (2001). . . . . . . . . . . . . . . . . . . . . . . 7

*Johnson v. United States*,
135 S. Ct. 2551 (2015). . . . . . . . . . . . . . . . . . *passim*

*Johnson v. United States*,
520 U.S. 461 (1997). . . . . . . . . . . . . . . . . . . . . . . 23

*Johnson v. United States*,
779 F.3d 125 (2d Cir. 2015) . . . . . . . . . . . . . . . . . 9

*Leocal v. Ashcroft*,
543 U.S. 1 (2004). . . . . . . . . . . . . . . . . . . . . . . 15, 16

Case 14-2041, Document 225, 05/04/2015, 2295470, Page4 of 39

iii

PAGE

*Lotes Co. v. Hon Hai Precision Indus. Co.,*
 753 F.3d 395 (2d Cir. 2014) . . . . . . . . . . . . . . . . . 8

*Mathis v. United States,*
 136 S. Ct. 2243 (2016). . . . . . . . . . . . . . . . . . . . . 10

*Moncrieffe v. Holder,*
 569 U.S. 184 (2013). . . . . . . . . . . . . . . . . . . . . 15, 16

*Neder v. United States,*
 527 U.S. 1 (1999). . . . . . . . . . . . . . . . . . . . . . 25, 29

*Nijhawan v. Holder,*
 557 U.S. 29 (2009). . . . . . . . . . . . . . . . . . . . . . 9, 15

*Ovalles v. United States,*
 861 F.3d 1257 (11th Cir. 2017) . . . . . . . . . . . . . 18

*Rosemond v. United States,*
 134 S. Ct. 1240 (2014). . . . . . . . . . . . . . . . . . . . . 24

*Sessions v. Dimaya,*
 138 S. Ct. 1204 (2018). . . . . . . . . . . . . . . . 3, 5, 11

*Shepard v. United States,*
 544 U.S. 13 (2005). . . . . . . . . . . . . . . . . . . . . 16, 17

*Shi Liang Lin v. United States Dep't of Justice,*
 494 F.3d 296 (2d Cir. 2007) . . . . . . . . . . . . . . . . . 8

*Simpson v. United States,*
 435 U.S. 6 (1978). . . . . . . . . . . . . . . . . . . . . . . . 19

*Skilling v. United States,*
 561 U.S. 358 (2010). . . . . . . . . . . . . . . . . . . . . . . 6

*Taylor v. United States,*
 495 U.S. 575 (1990). . . . . . . . . . . . . . . . . . . *passim*

iv

PAGE

*United States ex rel. Attorney General v.
Delaware & Hudson Co.,*
213 U.S. 366 (1909). . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Acosta,*
470 F.3d 132 (2d Cir. 2006) . . . . . . . . . . . . . . . 6, 8

*United States v. Carr,*
424 F.3d 213 (2d Cir. 2005) . . . . . . . . . . . . . . . . 25

*United States v. Correia,*
2017 WL 80245 n.1 (D. Mass. Jan. 9, 2017) . . . . 18

*United States v. Cravens,*
2017 WL 6559798 (10th Cir. Dec. 19, 2017) . . . . 18

*United States v. Crosby,*
397 F.3d 103 (2d Cir. 2005) . . . . . . . . . . . . . . . . 23

*United States v. Davis,*
726 F.3d 357 (2d Cir. 2013) . . . . . . . . . . . . . . . 13

*United States v. Davis,*
875 F.3d 592 (11th Cir. 2017) . . . . . . . . . . . . . . 20

*United States v. Doctor,*
842 F.3d 306 (4th Cir. 2016) . . . . . . . . . . . . . . . 21

*United States v. Doe,*
297 F.3d 76 (2d Cir. 2002) . . . . . . . . . . . . . . 23, 24

*United States v. Eshetu,*
863 F.3d 946 (D.C. Cir. 2017). . . . . . . . . . . . . . . 18

*United States v. Frady,*
456 U.S. 152 (1982). . . . . . . . . . . . . . . . . . . . . . . 25

v

PAGE

*United States v. Fuertes,*
    805 F.3d 485 (4th Cir. 2015) . . . . . . . . . . . . . . . 20

*United States v. Galati,*
    844 F.3d 152 (3d Cir. 2016) . . . . . . . . . . . . . . . 18

*United States v. Gansman,*
    657 F.3d 85 (2d Cir. 2011) . . . . . . . . . . . . . . . . 25

*United States v. Gaudin,*
    515 U.S. 506 (1995). . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Gill,*
    748 F.3d 491 (2d Cir. 2014) . . . . . . . . . . . . . . . 7

*United States v. Hayes,*
    555 U.S. 415 (2009). . . . . . . . . . . . . . . . . . . . 9, 21

*United States v. Henderson,*
    2017 WL 3820960 (M.D. Ga. Aug. 31, 2017). . . . 18

*United States v. Henry,*
    325 F.3d 93 (2d Cir. 2003) . . . . . . . . . . . . . . . . 23

*United States v. Hernandez,*
    228 F. Supp. 3d 128 (D. Me. 2017). . . . . . . . . . . 18

*United States v. Hill,*
    832 F.3d 135 (2d Cir. 2016) . . . . . . . . . . .  2, 3, 4, 6

*United States v. Ivezaj,*
    568 F.3d 88 (2d Cir. 2009) . . . . . . . . . . . . . . . . 6

*United States v. Jenkins,*
    849 F.3d 390 (7th Cir. 2017) . . . . . . . . . . . . . . . 20

*United States v. Martoma,*
    869 F.3d 58 (2d Cir. 2017) . . . . . . . . . . . . . . . . 7

vi

PAGE

*United States v. McCollum,*
    885 F.3d 300 (4th Cir. 2018) . . . . . . . . . . . . . . . 20

*United States v. Olano,*
    507 U.S. 725 (1993). . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Prado,*
    815 F.3d 93 (2d Cir. 2016) . . . . . . . . . . . . . . . 23, 24

*United States v. Rivera,*
    679 F. App'x 51 (2d Cir. 2017) . . . . . . . . . . . . . . 22

*United States v. Robinson,*
    844 F.3d 137 (3d Cir. 2016) . . . . . . . . . .  16, 17, 18

*United States v. Rodriguez,*
    2018 WL 1744734 (M.D. Pa. Apr. 11, 2018) . . . . 18

*United States v. Santana,*
    552 F. App'x 87 (2d Cir. 2014) . . . . . . . . . . . . . . 24

*United States v. St. Hubert,*
    883 F.3d 1319 (11th Cir. 2018) . . . . . . . .  9, 17, 18

*United States v. Thomas,*
    274 F.3d 655 (2d Cir. 2001) . . . . . . . . . . . . . . . . 22

*United States v. Villafuerte,*
    502 F.3d 204 (2d Cir. 2007) . . . . . . . . . . . . . . . . 24

*United States v. Viola,*
    35 F.3d 37 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . 23

*United States v. Walker,*
    473 F.3d 71 (3d Cir. 2007) . . . . . . . . . . . . . . . . . 19

vii

PAGE

*Statutes, Rules & Other Authorities*:

8 U.S.C. § 1326(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . 17

18 U.S.C. § 16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 15

18 U.S.C. § 1951 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 921(a)(33)(A) . . . . . . . . . . . . . . . . . . . . . . . 9

18 U.S.C. § 924(c) . . . . . . . . . . . . . . . . . . . . . . . *passim*

18 U.S.C. § 3553(a)(2) . . . . . . . . . . . . . . . . . . . . . . . 11

Fed. R. Crim. P. 52(a). . . . . . . . . . . . . . . . . . . . . . . . 25

# United States Court of Appeals

## FOR THE SECOND CIRCUIT
### Docket No. 14-2641

---

UNITED STATES OF AMERICA,

*Appellee,*

—v.—

DWAYNE BARRETT, also known as Sealed Defendant 3, also known as Tall Man,

*Defendant-Appellant,*

FAHD HUSSAIN, also known as Ali, also known as Moe, TAMESHWAR SINGH, also known as Sealed Defendant 5, SHEA DOUGLAS, JERMAINE DORE, also known as St. Kitts, also known as Blaqs, TAIJAY TODD, also known as Sealed Defendant 4, also known as Biggs, DAMIAN CUNNINGHAM, also known as Jaba,

*Defendants.*

---

## SUPPLEMENTAL BRIEF FOR THE UNITED STATES OF AMERICA

---

### Background

In *Johnson v. United States*, 135 S. Ct. 2551 (2015), the Supreme Court ruled that the portion of the Armed Career Criminal Act defining the term "violent felony"

2

to include any felony that "involves conduct that pre-sents a serious potential risk of physical injury to an-other," 18 U.S.C. § 924(e)(2)(B)(ii), was unconstitution-ally vague. *See Johnson*, 135 S. Ct. 2557-60. In *Johnson*'s wake, defendants like Barrett have sought to ap-ply its reasoning to, among other criminal statutes, 18 U.S.C. § 924(c). That section imposes a mandatory con-secutive term of imprisonment when a defendant uses or carries a firearm during, or possesses a firearm in furtherance of, a crime of violence or drug trafficking crime. A "crime of violence" is a federal felony that:

> (A)  has as an element the use, at-tempted use, or threatened use of physical force against the person or property of another, or
>
> (B)  that by its nature, involves a sub-stantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). Because the language of subsec-tion (B), referred to in this circuit as the "Risk-of-Force Clause," resembles in some ways the "violent felony" definition struck down in *Johnson*, Barrett has argued that the Risk-of-Force Clause is unconstitutional for the same reasons. Since the parties' briefing in Janu-ary 2016, however, intervening decisions have altered the analysis.

In *United States v. Hill*, 832 F.3d 135 (2d Cir. 2016), this Court identified key differences between ACCA and the Risk-of-Force Clause in § 924(c), and

3

held that those differences saved the Risk-of-Force Clause from the vagueness concerns identified in *Johnson*. *See id.* at 145-50.[1] However, in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), the Supreme Court ruled that the definition of "crime of violence" found in 18 U.S.C. § 16(b) suffered from the same vagueness problems that *Johnson* had found to be fatal to § 924(e)(2)(B)(ii), rendering § 16(b) unconstitutional as well. The Court explained that § 16(b) both "calls for a court to identify a crime's 'ordinary case' in order to measure the crime's risk" and also creates "uncertainty about the level of risk that makes a crime 'violent.' " *Dimaya*, 138 S. Ct. at 1215. In the course of its ruling, the Court rejected the Government's arguments—essentially identical to those adopted by this Court in *Hill*—attempting to distinguish § 16(b) from § 924(e)(2)(B)(ii). *Compare Dimaya*, 138 S. Ct. at 1218-23 *with Hill*, 832 F.3d at 145-50. Because the definition of "crime of violence" in § 16(b) mirrors the definition of the same term in § 924(c)(e)(B), were this Court to find *Dimaya*'s reasoning applicable to § 924(c)(3)(B), that portion of *Hill* may have been abrogated by *Dimaya*.

However, *Dimaya* does not affect the ultimate result in *Hill*. In that case, this Court held that Hobbs Act robbery, in violation of 18 U.S.C. § 1951, qualified as a "crime of violence" under both alternative definitions of that term found in § 924(c)(3). The first definition—known as the "Force Clause"—defines "crime of

_____

[1] A petition for rehearing remains pending in *Hill*, and the mandate has not yet issued.

Case 14-2641, Document 225, 05/04/2016, 2293470, Page12 of 39

4

violence" to include any felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). The *Hill* Court explained that Hobbs Act robbery meets this standard, applying precedent not implicated by *Johnson* or *Dimaya. See Hill*, 832 F.3d at 139-44. As a result, the *Hill* Court's additional analysis of the Risk-of-Force Clause was not essential to the holding.

In this case, by contrast, the Court may need to construe § 924(c)(3)(B) in light of *Dimaya.* Count One charged Barrett with conspiracy to commit Hobbs Act robbery, and Count Two charged him with a § 924(c) violation based on that conspiracy.[2] In its supplemental brief of January 19, 2016, the Government argued that conspiracy to commit Hobbs Act robbery qualifies as a "crime of violence" under the Force Clause definition of § 924(c)(3)(A). (*See* Supp. Br. at 21-23). Were this Court to disagree, however, Barrett's conviction on Count Two survives only if § 924(c)(3)(B) can be construed in a way that avoids the constitutional concerns identified in *Dimaya.*

_____

[2] Counts Four and Six charged Barrett with two § 924(c) violations based on substantive Hobbs Act robberies charged in Counts Three and Five, respectively. Count Seven charged Barrett with a § 924(j) violation connected to the Count Five robbery. Those convictions should be affirmed based on the unaffected portion of *Hill*, and for the reasons stated in the Government's principal and previous supplemental briefs.

5

It can. *Dimaya* did not include any holding by a majority of the Court that § 16(b) requires a categorical approach,[3] and it leaves open the same question for § 924(c)(3)(B). In fact, the *Dimaya* majority went out of its way to emphasize that the "substantial risk" language in § 16(b) raised constitutional concerns only when assessed under the categorical approach. *Id.* at 1215-16. Importantly for this case, the Court emphasized that, "[i]n *Johnson*'s words, 'we do not doubt' the constitutionality of applying § 16(b)'s 'substantial risk [standard] to real-world conduct.'" *Id.* at 1215 (quoting *Johnson*, 135 S. Ct. at 2561). In light of *Dimaya*, this Court should reconsider the categorical approach previously applied to the determination of what qualifies as a "crime of violence" under the Risk-of-Force Clause, and adopt in its place the "underlying-conduct" approach espoused by numerous judges since *Johnson* and endorsed by Justice Thomas's dissenting opinion (joined by Kennedy and Alito, JJ.) in *Dimaya*. Where a defendant's § 924(c) charge relies on the Risk-of-Force Clause, the jury can and should be asked to find whether the underlying offense meets that test. This approach eliminates the vagueness concerns identified in *Dimaya* by ensuring that the specifics of

_____

[3] A four-justice plurality viewed Section 16(b) as "[b]est read" to require such an approach. *Dimaya*, 138 S. Ct. at 1217 (opinion of Kagan, J.). Justice Gorsuch was willing to consider the need for the categorical approach "in another case." *Id.* at 1233 (Gorsuch, J., concurring in part and in judgment).

6

the crime actually committed by the defendant—rather than some hypothetical version of such an offense —are presented to and found beyond a reasonable doubt by the jury. And it comports with modern interpretations of the Sixth Amendment jury trial right, which directs that fact-bound aspects of criminal offenses be determined by the jury.

## POINT I

### The Current Categorical Approach and Grounds for Panel Reconsideration

Under this Court's current precedents, whether a § 924(c) count's underlying crime is a "crime of violence" is a question of law for the court, determined by applying the "categorical approach." *Hill*, 832 F.3d at 139; *see also United States v. Ivezaj*, 568 F.3d 88, 95 (2d Cir. 2009); *United States v. Acosta*, 470 F.3d 132, 134-35 (2d Cir. 2006). "Under the categorical approach, courts identify the minimum criminal conduct necessary for conviction under a particular statute," examining only the statutory definitions of the offense, not the defendant's conduct in committing it. *Hill*, 832 F.3d at 139.

This Court has not previously had any reason to consider the propriety of using the categorical approach to construe the Risk-of-Force Clause, because the *Hill* Court rejected the defendant's vagueness challenge to that provision. But in light of *Dimaya*, using the categorical approach in this context now raises serious constitutional questions. Because courts must construe federal statutes to avoid unconstitutional results when possible, *see, e.g.*, *Skilling v. United States*,

7

561 U.S. 358, 408-09 (2010) (interpreting honest-services fraud statute so as "[t]o preserve the statute without transgressing constitutional limitations"); *INS v. St. Cyr*, 533 U.S. 289, 300 (2001) (recognizing that a court is "obligated to construe [a] statute to avoid [constitutional] problems" if it is " 'fairly possible' " to do so) (citations omitted), this Court should interpret § 924(c)(3)(B) to require that the factfinder decide whether an offense qualifies as a "crime of violence" under the Risk-of-Force Clause based on the underlying facts of a defendant's predicate offense. Such a case-specific approach makes particular sense in the context of § 924(c), which employs the term "crime of violence" exclusively to describe the circumstances of the conduct for which the defendant is presently charged.

Although *Acosta* and *Ivezaj* applied the categorical approach to § 924(c), in light of *Dimaya* this Court may reconsider that analysis without in banc proceedings. "[I]f there has been an intervening Supreme Court decision that casts doubt on our controlling precedent, one panel of this Court may overrule a prior decision of another panel. The intervening decision need not address the precise issue decided by the panel for this exception to apply." *United States v. Gill*, 748 F.3d 491, 502 n.8 (2d Cir. 2014) (quotations omitted). "Even if the effect of a Supreme Court decision is subtle, it may nonetheless alter the relevant analysis fundamentally enough to require overruling prior, inconsistent precedent." *United States v. Martoma*, 869 F.3d 58, 68–69 (2d Cir. 2017) (quotations and citations omitted). *Acosta* was a per curiam decision that adopted the categorical approach from § 16 cases without considering

8

whether a different analysis might be more appropriate for § 924(c), and apparently with the consent of the parties, *see Acosta*, 470 F.3d at 134-35, which further supports reconsideration here. *See Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 405 (2d Cir. 2014) ("lacking the Supreme Court's guidance and following the arguments of the parties before us, our decision in *Filetech* treated the FTAIA's requirements as jurisdictional with little analysis"). Nor should *stare decisis*, particularly in the realm of statutory interpretation, prevent this Court from revisiting its methodology. "While *stare decisis* is undoubtedly of considerable importance to questions of statutory interpretation, the Supreme Court 'ha[s] never applied *stare decisis* mechanically to prohibit overruling . . . earlier decisions determining the meaning of statutes.' We should not do so either." *Shi Liang Lin v. United States Dep't of Justice*, 494 F.3d 296, 310 (2d Cir. 2007) (citation omitted).

## POINT II

### Section 924(c)(3)(B) Should Be Interpreted To Require An Underlying-Conduct Approach

### A. The Text and Context of § 924(c)(3)(B) Support An Underlying-Conduct Approach

In a § 924(c) case, the jury's role inherently requires it to make determinations about the conduct charged as a "crime of violence" under the Risk-of-Force Clause. A § 924(c) conviction requires the jury to find, among other elements, that the defendant in fact committed the underlying crime of violence, which

9

must be specifically identified in the indictment. *Johnson v. United States*, 779 F.3d 125, 129-30 (2d Cir. 2015). Unlike in the context of a recidivist sentencing enhancement (like ACCA) or the classification of a prior offense for purposes of determining an alien's removability (like § 16(b) in *Dimaya*), § 924(c)(3)(B)'s definition of a "crime of violence" is never applied to a prior conviction, the specific facts of which may not be before the court. Instead, a prosecution under § 924(c) will by necessity involve a "developed factual record" about the underlying crime. *United States v. St. Hubert*, 883 F.3d 1319, 1335 (11th Cir. 2018). That feature of § 924(c) cases enables the jury to apply the "crime of violence" definition in the Risk-of-Force Clause in a case-specific manner that considers a defendant's own conduct. Construing the statute to incorporate such an approach "makes good sense," *id.* at 1334, and is consistent with its text, context, history, and interpretation by the Supreme Court.

As the Supreme Court recognized in *Nijhawan v. Holder*, 557 U.S. 29, 33-34 (2009), "in ordinary speech words such as 'crime,' 'felony,' 'offense,' and the like . . . sometimes refer to the specific acts in which an offender engaged on a specific occasion." *Id.* at 33-34. The Supreme Court in that case accordingly interpreted a provision that used the term "offense" to "call[] for a 'circumstance-specific,' not a 'categorical,' interpretation." *Id.* at 36. Similarly, *United States v. Hayes*, 555 U.S. 415, 421 (2009), construed a statutory reference to "an offense . . . committed by a current or former spouse," 18 U.S.C. § 921(a)(33)(A), as contemplating a factual, rather than a categorical, inquiry. As the Supreme Court explained in a later decision, the

10

language at issue in *Hayes* was exactly the kind that Congress would employ as an instruction "to look into the facts" of a crime. *Mathis v. United States*, 136 S. Ct. 2243, 2252 (2016). Section 924(c)(3)(B)'s similar reference to "committing the offense" can thus reasonably be understood to refer to the specific criminal conduct at issue in the § 924(c) prosecution. *See Johnson v. United States*, 135 S. Ct. 2551, 2562 (2015) (recognizing that reference to the commission of an offense can indicate a case-specific approach).

Section 924(c)(3)(B) also uses the term "involves," a term that Congress repeatedly used in other provisions of the Comprehensive Crime Control Act of 1984 (the enactment that contained the original "crime of violence" definition for Section 924(c)) in a manner that requires courts to consider a defendant's underlying conduct. *See, e.g.*, 98 Stat. 2059 (elevating the burden of proof for the release of "a person found not guilty only by reason of insanity of an offense involving bodily injury to, or serious damage to the property of, another person, or involving a substantial risk of such injury or damage"); *id.* at 2068 (establishing the sentence for drug offenses "involving" specific quantities and types of drugs); *id.* at 2137 (defining violent crimes in aid of racketeering to include "attempting or conspiring to commit a crime involving maiming, assault with a dangerous weapon, or assault resulting in serious bodily injury"). Although the rule is not invariable, it is a "basic canon of statutory construction that identical terms within an Act bear the same meaning." *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 479 (1992). Application of that canon makes particular sense in this context, because the Supreme Court has

11

previously relied on the absence of the word "involves" as indicating that a categorical approach is required. See *Taylor v. United States*, 495 U.S. 575, 600 (1990).

A jury can readily determine what a defendant's underlying offense "by its nature, involves." The term "nature" refers to "the basic or inherent features, character, or qualities of something." Oxford Dictionary of English 1183 (3d ed. 2010). Here, that "something" would be the defendant's own crime, already before the jury as an aspect of the § 924(c) charge. Courts have been applying this term in the criminal sentencing context for years, without apparent difficulty or ambiguity. Among the factors a sentencing judge is to consider are "the nature and circumstances of the offense" —naturally understood as the defendant's own conduct. 18 U.S.C. § 3553(a)(2). Similarly, in the context of the Risk-of-Force Clause, the phrase "by its nature" can reasonably be read to "mean only that an offender who engages in risky conduct cannot benefit from the fortuitous fact that physical force was not actually used during his offense." *Dimaya*, 138 S. Ct. at 1254 (Thomas, J., dissenting). A jury finding the facts of a particular offense is well positioned to also determine its "nature," such as whether a conspiracy to commit armed robbery that was thwarted by law enforcement before execution nevertheless involved a substantial risk that force would be used during the course of the conspiracy.

The position and function of § 924(c)(3)(B) suggest a statutory inquiry that goes beyond the legal definition of an offense. The Risk-of-Force Clause in § 924(c)(3)(B) operates in tandem with the Force

Case 14-2641, Document 223, 05/04/2016, 2293470, Page200 of 39

12

Clause in § 924(c)(3)(A), which defines a "crime of violence" to include any federal offense that "has as an element the use, attempted use, or threatened use of physical force." The categorical approach is well-suited to inquiries under the Force Clause. Unlike some other inquiries into past convictions, *see, e.g.,* 8 U.S.C. § 1101(a)(43)(M)(i) (defining "aggravated felony" to include fraud offenses "in which the loss to the victim or victims exceeds $10,000"), the Force Clause does not direct the court to consider the underlying facts. Rather, the court examines the statutory requirements of the offense, looking for whether the Government must demonstrate the presence of the use, attempted use, or threatened use of physical force to obtain a conviction.

By contrast, the Risk-of-Force Clause is necessarily understood to cover offenses other than those covered by § 924(c)(3)(A). *See Corley v. United States*, 556 U.S. 303, 314 (2009) (explaining the "basic interpretive canon[ ]" that different provisions of a statute should be interpreted to mean different things). And because § 924(c)(3)(A) already covers all offenses that have the legal element of physical force, § 924(c)(3)(B)'s substantial-risk-of-force standard naturally invites an inquiry that goes outside the four corners of an offense's legal definition. Under this structure, some federal crimes—those with certain elements—are *always* "crimes of violence," and hence not subject to jury factfinding. Other crimes are *sometimes* "crimes of violence," and in those cases the jury must make the necessary findings to preserve the defendant's Sixth Amendment jury trial rights.

13

It would not be unusual for the Force Clause to pre-
sent a legal question, to be determined by a judge,
while the Risk-of-Force Clause presented a factual
question requiring a jury finding. In *United States v.
Davis*, 726 F.3d 357 (2d Cir. 2013), this Court noted
that the question of "whether a crime took place within
the special maritime and territorial jurisdiction of the
United States requires two separate inquiries: one to
determine the 'locus of the crime' and one to determine
the existence *vel non* of federal jurisdiction." *Id.* at 368.
The first of these, the Court held, "is plainly a factual
question for the jury to decide," while "the latter—
turning on a fixed legal status that does not change
from case to case and involving consideration of source
materials (such as deeds, statutes, and treaties) that
judges are better suited to evaluate than juries—has
always been treated in this Circuit as a legal question
that a court may decide on its own." *Id.* The nature of
the inquiry dictates the approach, not the placement
of the question within the statute. Mixed questions of
fact and law—materiality of a false statement, a rob-
bery's effect on interstate commerce—require jury
findings or admissions in guilty pleas. Properly under-
stood, the Risk-of-Force Clause, which requires an
evaluation of the "nature" of the defendant's crime and
an assessment of the "risk" that conduct involves, pre-
sents just such a mixed question.

The customary way to apply a "qualitative stand-
ard such as 'substantial risk'" is to do so by reference
"to real-world conduct." *Johnson*, 135 S. Ct. at 2561.
"[D]ozens of federal and state criminal laws" use such
terms, and "almost all" of them "require gauging the
riskiness of conduct in which an individual defendant

14

engages *on a particular occasion.*" *Id.* An "ordinary case" categorical approach is the exception, not the norm, and § 924(c)(3)(B)'s "substantial risk" inquiry can thus readily be understood as a mixed question of law and fact that would either be resolved by a jury or admitted by the defendant in connection with a guilty plea. *See United States v. Gaudin*, 515 U.S. 506, 522-23 (1995) (noting that, with the exception of "pure questions of law," "[t]he Constitution gives a criminal defendant the right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged") (emphasis omitted).

## B. The Reasons For Applying The Categorical Approach To Other Statutes Do Not Apply To § 924(c)(3)(B)

The Supreme Court has required an "ordinary case" categorical approach only in the context of statutes that are applied to classify prior convictions. The reasons for applying the categorical approach in that context do not extend to § 924(c)(3)(B), which instead applies only to the conduct giving rise to the current prosecution.

The Supreme Court first endorsed a "categorical approach" interpretation of a federal statute in *Taylor v. United States*, 495 U.S. 575 (1990). The Court in that case considered whether ACCA's reference to a prior conviction for "burglary" meant burglary as defined by state law or instead referred to "some uniform definition." *Taylor,* 495 U.S. at 581. The Court determined that Congress had intended to refer to burglary

Case 14-2041, Document 223, 05/04/2016, 2293470, Page 23 of 39

15

in a uniform "generic" sense, *id.* at 598, and then addressed how the government would prove that a defendant's prior conviction was for "generic burglary," *id.* at 599-602.

The *Taylor* Court held that ACCA's language, in particular its use of the term "convictions" and its elements clause, supported "the inference that Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions." *Id.* at 600. "Read in this context," the Court found, ACCA's reference to "burglary" "most likely refers to the elements of the statute of conviction, not to the facts of each defendant's conduct. *Id.* at 600-01. So the Court interpreted ACCA to "mandate[ ] a formal categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." *Id.* at 600.

The Court has also "generally"—but not invariably—"employ[ed] a 'categorical approach'" when "the Government alleges that a state conviction qualifies as an 'aggravated felony'" under the Immigration and Nationality Act. *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013); *but see Nijhawan*, 557 U.S. at 33-38 (applying a case-specific approach to a particular portion of the "aggravated felony" definition). The Court's use of the categorical approach in that context has extended to 18 U.S.C. § 16, which is incorporated by reference into the aggravated-felony definition, as well as "a variety of [other] statutory provisions, both criminal and noncriminal." *Leocal v. Ashcroft*, 543 U.S. 1, 6

16

(2004); *see id.* at 7 (stating that the "language" of § 16 "requires us to look to the elements and the nature of the offense of conviction, rather than to the particular facts relating to [an alien's] crime").

At the "heart of the decision" in *Taylor* was a limitation on the amount of evidence about the circumstances underlying prior convictions that the parties would be permitted to introduce for the first time at sentencing. *Shepard v. United States*, 544 U.S. 13, 23 (2005); *see Taylor*, 495 U.S. at 601 (explaining why "the practical difficulties and potential unfairness of a factual approach are daunting" in that context). Prior convictions "that are counted for an ACCA enhancement are often adjudicated by different courts in proceedings that occurred long before the defendant's sentencing." *United States v. Robinson*, 844 F.3d 137, 142 (3d Cir. 2016). In such cases, the categorical approach serves the " 'practical' purpose[ ]" of "promot[ing] judicial and administrative efficiency by precluding the relitigation of past convictions in minitrials conducted long after the fact." *Moncrieffe*, 569 U.S. at 200-01 (citation omitted).

Categorical analysis of prior convictions also avoids Sixth Amendment concerns. A judge's resolution of the disputed facts underlying a defendant's prior conviction at sentencing would be "too much like" the kind of factfinding that the Sixth Amendment requires the jury to conduct. *Shepard*, 544 U.S. at 25 (plurality op.). Thus, in the context of ACCA's residual clause, which increases the statutory sentencing range for certain federal firearm crimes if the defendant has a sufficient number of qualifying prior convictions, the categorical

17

approach was required to comply with the "rule of reading statutes to avoid serious risks of unconstitutionality." *Id.* The same is true of many criminal statutes that incorporate § 16(b). *See, e.g.*, 8 U.S.C. § 1326(b)(2) (providing an increased statutory-maximum term of imprisonment for an alien who illegally reenters the United States and has a prior conviction for an "aggravated felony," which includes a "crime of violence" under § 16).

For those practical and constitutional reasons, "[t]he categorical approach serves a purpose when evaluating prior state convictions committed long ago in fifty state jurisdictions with divergent laws." *St. Hubert*, 883 F.3d at 1336. But, as numerous courts have recognized, it does not serve that purpose in the context of § 924(c)(3)(B), where a jury has the facts of the underlying offense before it and must determine whether the defendant committed that offense before determining whether the defendant's use, carrying, or possession of a gun violated § 924(c). The reasoning of *Taylor* and its progeny may support a categorical approach to the Force Clause, which refers to elements, but it does not support such an interpretation of the Risk-of-Force Clause, which refers to the commission of an ongoing crime rather than a conviction. Unlike in the context of the classification of prior crimes, no practical or constitutional reason exists that would require courts to "analyz[e] a § 924(c) predicate offense in a vacuum." *Robinson*, 844 F.3d at 143. In the context of a § 924(c) prosecution based on the Risk-of-

18

Force Clause, "[t]he remedial effect of the 'categorical' approach is not necessary." *Id.* at 141.[4]

Nor does an underlying-conduct approach give rise to any of the Sixth Amendment concerns that animated the Supreme Court's adoption of the categorical approach. Under that interpretation, "any fact that increases the penalty for a crime" under § 924(c) is in fact "submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). Accordingly, the defendant "suffers no prejudice because the court is not finding any new facts which are not of record in the case before it." *Robinson*, 844 F.3d at 143.

_____

[4] Some of the many opinions questioning the need for the categorical approach in § 924(c) cases include *St. Hubert*, 883 F.3d at 1334-37; *United States v. Cravens*, ___ F. App'x ___, 2017 WL 6559798, at *6-*8 (10th Cir. Dec. 19, 2017) (O'Brien, J., concurring); *United States v. Eshetu*, 863 F.3d 946, 960-61 (D.C. Cir. 2017) (Millet, J., concurring in part and in judgment); *Ovalles v. United States*, 861 F.3d 1257, 1265-66 (11th Cir. 2017); *In re Irby*, 858 F.3d 231, 234 (4th Cir. 2017); *United States v. Galati*, 844 F.3d 152, 154-55 (3d Cir. 2016); *United States v. Rodriguez*, 2018 WL 1744734, at *3 (M.D. Pa. Apr. 11, 2018); *United States v. Henderson*, 2017 WL 3820960, at *3-*6 (M.D. Ga. Aug. 31, 2017); *United States v. Hernandez*, 228 F. Supp. 3d 128, 131 (D. Me. 2017); and *United States v. Correia*, 2017 WL 80245, at *1 n.1 (D. Mass. Jan. 9, 2017).

19

Because the underlying-conduct approach is a "reasonabl[e]" interpretation of § 924(c)(3)(B), it is the courts' "plain duty" to adopt it rather than strike down the statute as unconstitutionally vague. *United States ex rel. Attorney General v. Delaware & Hudson Co.*, 213 U.S. 366, 407 (1909). Abandoning what should be viewed as a mistaken interpretation of § 924(c)(3)(B) would neither improperly "rewrit[e]" § 924(c)(3)(B) nor require a court to "use its remedial powers to circumvent the intent of the legislature." *Ayotte v. Planned Parenthood*, 546 U.S. 320, 329-30 (2006) (quotation omitted). If anything, it would be the invalidation of § 924(c)(3)(B) despite the existence of a viable alternative construction that would flout Congress's clear intent.

"Congress's 'overriding purpose' in passing § 924(c) 'was to combat the increasing use of guns to commit federal felonies.'" *United States v. Walker*, 473 F.3d 71, 78 (3d Cir. 2007) (quoting *Simpson v. United States*, 435 U.S. 6, 10 (1978)). A categorical approach for § 924(c)(3)(B) subverts that purposes by requiring juries and judges to ignore obviously violent conduct, proven in a contemporaneous proceeding, that was made more violent by the presence of a firearm. Nothing suggests that Congress imposed a categorical approach when it enacted § 924(c)(3)(B) in 1984. At the time, Congress had not yet enacted ACCA's residual clause, the Supreme Court had not yet created the categorical approach, and the Court had not yet recognized constitutional limits on judicial factfinding, *see Chambers v. United States*, 555 U.S. 122, 132 (2009) (Alito, J., concurring in judgment).

20

Finally, and importantly, the failure to find a con-stitutionally-valid construction of the Risk-of-Force clause has real-world consequences that cannot be overlooked. Operating by itself, a categorical approach to the Force Clause of § 924(c)(3)(A) based on hypo-theticals about how a crime might conceivably be com-mitted, if not tempered by the availability of a valid Risk-of-Force Clause applying to the actual facts at hand, risks effectively immunizing from § 924(c) liabil-ity those who commit crimes like murder, aggravated assault, and even terrorist bombings in the course of a variety of federal crimes. One need not look very hard to find examples of traditionally (and factually) violent crimes nevertheless deemed not to constitute crimes of violence under the categorical approach. *See United States v. McCollum,* 885 F.3d 300, 304-09 (4th Cir. 2018) (holding that, under the Sentencing Guidelines, conspiracy to commit murder is not a crime of vio-lence); *United States v. Davis,* 875 F.3d 592, 595, 604 (11th Cir. 2017) (finding Alabama sexual abuse stat-ute not to be a crime of violence, but only because cat-egorical approach is a "rabbit hole," a "pretend place in which a crime that the defendant committed violently is transformed into a non-violent one because other de-fendants at other times may have been convicted, or future defendants could be convicted, of violating the same statute without violence" because "the true facts matter little, if at all, in this odd area of the law"); *United States v. Jenkins,* 849 F.3d 390 (7th Cir. 2017) (holding that kidnapping, in violation of 18 U.S.C. § 1201(a), is not a crime of violence because it can be accomplished by "inveigling" or "decoying"); *United States v. Fuertes,* 805 F.3d 485, 500 (4th Cir. 2015)

21

(holding that sex trafficking by force, fraud, or coercion, in violation of 18 U.S.C. § 1591(a), is not a crime of violence). If § 924(c)(3)(B) is unconstitutionally vague because it requires a categorical approach, these violent crimes—even if committed using a firearm—will not be considered "crimes of violence" at all. As Judge Wilkinson has observed, "[t]he alluring theoretical terminology of the categorical approach has too often served to isolate [judges] in a judicial bubble, sealed conveniently off from the real-life dangers that confront American citizens in their actual lives." *United States v. Doctor*, 842 F.3d 306, 313 (4th Cir. 2016) (Wilkinson, J., concurring). This Court can avoid such a result here—which would require declaring that a robbery conspiracy that involved the shooting and assault of several people is nevertheless not a "crime of violence"—simply by adopting the workable and constitutional underlying-conduct approach to the Risk-of-Force Clause.

Since it first adopted the categorical approach in 1990, the Supreme Court has repeatedly cautioned against employing it to reach absurd results. *See, e.g.*, *Taylor*, 495 U.S. at 594 ("[W]e shall not read into the statute a definition . . . so obviously ill-suited to its purposes."); *see also United States v. Hayes*, 555 U.S. 415, 426-27 (2009) ("Construing" a particular federal statute "to exclude the domestic abuser convicted under a generic use-of-force statute . . . would frustrate Congress's manifest purpose"). Striking down § 924(c)(3)(B) as unconstitutionally vague when a textually supportable and readily administrable alternative interpretation is available would be such a result.

22

This Court can and should adopt an underlying-conduct approach for § 924(c)(3)(B).

## POINT III

### The Failure to Ask The Jury to Find that the Conspiracy to Commit Hobbs Act Robbery in Count One Was A "Crime of Violence" Was Demonstrably Harmless

Should this Court adopt the underlying-conduct approach to the Risk-of-Force Clause, it would require submission of the "crime of violence" determination in such cases to the jury. Barrett's jury was not asked to make such a finding, but his conviction on Count Two should nevertheless be affirmed because that error was unquestionably harmless in light of the evidence proven at trial.

### A.   Standard of Review

Barrett did not object to having the court, rather than the jury, decide whether Count One met the Risk-of-Force Clause definition of "crime of violence" for purposes of his § 924(c) conviction in Count Two. In such a situation, even though that approach was consistent with settled circuit law, this Court reviews for plain error. *See, e.g.*, *United States v. Rivera*, 679 F. App'x 51, 55 (2d Cir. 2017) (applying plain error standard to unpreserved claim that Hobbs Act robbery was not a crime of violence after *Johnson*); *United States v. Thomas*, 274 F.3d 655, 666 (2d Cir. 2001) (in banc) (unpreserved *Apprendi* claim subject to plain-error review). This is true even where the claim of error on ap-

23

peal is due to an intervening Supreme Court case, including one of constitutional proportions.[5] *See, e.g.*, *United States v. Doe*, 297 F.3d 76, 81-82 (2d Cir. 2002) (applying plain error review in *Apprendi* analysis); *United States v. Crosby*, 397 F.3d 103, 115-16 (2d Cir.

---

[5] Because the "source of [the alleged] plain error is a supervening decision," Barrett may argue for review under this Court's modified plain-error standard, which—if it still exists—would dictate that "the government, not the defendant, bears the burden to demonstrate that the error was harmless." *United States v. Henry*, 325 F.3d 93, 100 (2d Cir. 2003) (quotation marks and ellipses omitted). However, as the Government has repeatedly argued, the modified plain-error rule—traceable to *United States v. Viola*, 35 F.3d 37 (2d Cir. 1994)—did not survive the Supreme Court's decision in *Johnson v. United States*, 520 U.S. 461 (1997) (applying strict plain-error review to an unpreserved claim based on a supervening decision), and cannot be reconciled with the unqualified allocation of the burden in *United States v. Olano*, 507 U.S. 725, 734-35, 739-40 (1993). Although this Court has recognized the tension between *Johnson* and modified plain-error review on numerous occasions, it has never found it necessary to decide the question. *See, e.g.*, *Prado*, 815 F.3d at 102-03. The Government submits that, as in *Prado*, "the outcome is the same regardless of whether the [G]overnment or [Barrett] bear[s] the burden of persuasion," but suggests that this Court should acknowledge that "*Johnson* sounded the modified plain error rule's death knell." *Id.* at 103.

Case 14-2641, Document 225, 05/04/2016, 2293470, Page32 of 39

24

2005) (applying plain error review to pre-*Booker* sentencing where judge applied mandatory Guidelines, as was the law at the time of sentencing); *United States v. Prado*, 815 F.3d 93, 100 (2d Cir. 2016) (applying plain error review where jury had been instructed on aiding and abetting liability prior to the Supreme Court's change in the law in *Rosemond v. United States*, 134 S. Ct. 1240 (2014)). In *United States v. Santana*, 552 F. App'x 87 (2d Cir. 2014), even though the defendant was convicted and sentenced under what was indisputably good law at the time, when the Supreme Court changed the applicable law while the defendant's appeal was still pending, this Court still applied plain-error review. *Id.* at 92 (explaining that "[e]rrors 'not brought to the court's attention' are reviewed for plain error, . . . including in cases where a change in applicable law occurred after conviction.") (citation omitted). Accordingly, plain-error review applies to the district court's failure to charge the jury regarding the "crime of violence" definition applicable to Count Two.

To establish plain error, the defendant must establish (1) error (2) that is plain and (3) affects substantial rights. *United States v. Villafuerte*, 502 F.3d 204, 209 (2d Cir. 2007) (citing *United States v. Doe*, 297 F.3d 76, 82 (2d Cir. 2002) (additional citation omitted). If the error meets these initial requirements, the Court must then "consider whether to exercise [its] discretion to correct it, which is appropriate only if the error seriously affected the 'fairness, integrity, or public reputation of the judicial proceedings.' " *Id.* (quoting *Doe*, 297 F.3d at 82). Reversal for plain error should "be used sparingly, solely in those circumstances in which

Case 14-2641, Document 223, 05/04/2016, 2293470, Page33 of 39

25

a miscarriage of justice would otherwise result."
*United States v. Frady*, 456 U.S. 152, 163 n.14 (1982).

Even had Barrett requested an instruction requir-
ing the jury to find that the predicate Hobbs Act rob-
bery conspiracy was a crime of violence, reversal would
not be warranted if the trial court's error was harm-
less. *See* Fed. R. Crim. P. 52(a); *United States v.
Gansman*, 657 F.3d 85, 91-92 (2d Cir. 2011). A pre-
served error of constitutional magnitude is harmless
"if it is 'clear beyond a reasonable doubt that a rational
jury would have found the defendant guilty absent the
error.'" *United States v. Carr*, 424 F.3d 213, 218 (2d
Cir. 2005) (quoting *Neder v. United States*, 527 U.S. 1,
18 (1999)).

## B.  Discussion

Because the "underlying-conduct" approach to the
Risk-of-Force Clause requires the jury to find that the
predicate offense met that definition of "crime of vio-
lence," it was error under that approach to fail to ask
Barrett's jury to make that determination. But under
any standard of review, the evidence at trial demon-
strated beyond a reasonable doubt that the Hobbs Act
robbery conspiracy charged in Count One satisfied the
Risk-of-Force Clause.

As proven at trial, the Hobbs Act robbery conspir-
acy charged in Count One undoubtedly "involve[d] a
substantial risk that physical force against the person
or property of another may be used in the course of
committing the offense," 18 U.S.C. § 924(c)(3)(B), for
the incontrovertible reason that the crime did, in fact,
involve multiple uses of force and threats of force

26

against the persons of others. Members of Barrett's robbery crew (the "Crew") carried out robberies using guns, knives, and baseball bats to threaten their victims. (Tr. 1001-06). In particular:

- When the Crew robbed Abdul Rauf on August 22, 2011 (Overt Act a), one Crew member hit Rauf with a fist while another grabbed his bag, taking approximately $46,000. (Tr. 556-59).

- When the Crew attempted to rob Mubarak Tawfiq and his co-worker on October 5, 2011 (Overt Act d), they pushed the co-worker into the car and grabbed the bag of money that Tawfiq had on the floor of his car, "struggl[ing] with Tawfiq. (Tr. 724-26).

- When the Crew robbed Youssef Abdulkader on October 10, 2011 (Overt Act f), they approached Abdulkader, brandishing a knife, and asked Abdulkader if he "ha[d] a minute"; Abdulkader dropped his cellphone and laptop computer and ran. (Tr. 224-26).

- When the Crew robbed Praeshant Goel on October 11, 2011 (Overt Act g), they approached Goel while he was in his car, broke his window with a baseball bat, stabbed the car's tire with a knife, and reached into the car with the knife, threatening Goel, and punched Goel before taking approximately $6,000 in cash

27

and thousands of dollars' worth of telephone calling cars. (Tr. 1427-33).

• When the Crew robbed Ahmed and Kassim Salahi on October 29, 2011 (Overt Act h), two Crew members—one showing a gun and the other showing a knife—took hold of Ahmed as he came out of a mosque, pushed him into his car, forced him to lay down between the seats, and drove him back to his house, held Ahmed down at knifepoint, "grabbed [Kassim's] kids," threatened Kassim with two guns, and covered Kassim and his children with blankets, telling them not to move or make a sound, before taking approximately $15,000. (Tr. 583-93, 618-26, 1011, 1016).

• When the Crew robbed Fitzroy Cornwall on December 5, 2011, they threw Cornwall to the ground, drew a gun, and fired the gun in the air before taking Cornwall's chain, wallet, and money. (Tr. 1284-87, 1343-50).

• When the Crew attempted to rob Gamar Dafalla on December 12, 2011 (Overt Act i), they approached Dafalla and two others in a minivan, brandishing guns, drove away with Dafalla, and shot and killed Dafalla. (Tr. 827-31, 1255-59, 1490-98; GX 201-65, 505).

28

- When the Crew attempted to rob Mohammed Althomory, also on December 12, 2011 (Overt Act j), they did so by threatening Althomory with a knife and a gun: "the other guy come from behind me and he hold my eyes and then he take a knife and he put his left hand in my mouth, he tried to cover my mouth not to yell or not to scream and he told me don't move, I will murder you. . . . One came from behind and the other came from the other side to face me and he has a gun in his hand . . . ." (Tr. 685-86). They then hit Althomory multiple times before taking approximately $15,000. (Tr. 687, 689-91).

- When the Crew robbed Ayoub Mohammed on December 31, 2011 (Overt Act l), they repeatedly beat and punched Mohammed, throwing him to the ground, beating him more, and finally taking his bag. (Tr. 891-94, 1024).

- When the Crew robbed Djujka Krco on January 7, 2012 (Overt Act m), they did so by pushing her into her car, threatening her with a knife, hitting her, and grabbing her when she ran before taking approximately $1,800. (Tr. 149-52).

This mountain of evidence demonstrates why the underlying-conduct approach to the Risk-of-Force Clause, rather than some abstract fictional concoction of an offense that was never committed, comports with congressional intent to ensure that violent criminals

Case 14-2041, Document 225, 05/04/2016, 2293470, Page37 of 39

29

who use firearms and explosives in connection with their crimes face substantial prison terms. No serious observer can dispute the vicious violence inherent in the Crew's conduct. Nor can any legitimate argument be raised that, had the jury been asked to confirm the risk of violence inherent in Count One, it would not have done so.

In light of this evidence—all of which was presented to the jury in connection with proving Count One—it is "clear beyond a reasonable doubt that a rational jury would have found" that the Hobbs Act robbery conspiracy charged in Count One "by its nature, involve[d] a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," and therefore was a crime of violence. *Neder*, 527 U.S. at 18; 18 U.S.C. § 924(c)(3)(B). Accordingly, the error was harmless under any standard of review.

30

## CONCLUSION

## The judgment of conviction should be affirmed.

Dated:    New York, New York
          May 4, 2018

                   Respectfully submitted,

                   GEOFFREY S. BERMAN,
                   *United States Attorney for the*
                   *Southern District of New York,*
                   *Attorney for the United States*
                           *of America.*

KARL METZNER,
MICHAEL D. MAIMIN,
    *Assistant United States Attorneys,*
             *Of Counsel.*

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel hereby certifies that this brief complies with the type-volume limitation applicable to reply briefs, as directed by the Court in its Order of April 23, 2018. As measured by the word processing system used to prepare this brief, there are 6,967 words in this brief.

GEOFFREY S. BERMAN,
*United States Attorney for the*
*Southern District of New York*

By: KARL METZNER,
*Assistant United States Attorney*