UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v.-

AKAYED ULLAH,

                  Defendant.

18 Cr. 16 (RJS)

## THE GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S MOTIONS *IN LIMINE*

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
One Saint Andrew's Plaza
New York, New York 10007

Shawn G. Crowley
Rebekah Donaleski
George D. Turner
Assistant United States Attorneys
    *Of Counsel*

The Government respectfully submits this memorandum of law in opposition to the defendant's motions *in limine* ("Def. Br." (Dkt. 37)) and proposals for jury selection (*see* Dkt. 40).  For the reasons set forth below, the defendant's motions should be denied.

1. Terrorist Propaganda Materials [1] : The Terrorist Propaganda Materials are relevant, admissible, and not unduly prejudicial.  The defendant's efforts to preclude or restrict their introduction run directly contrary to authority from the Second Circuit and this District.

2. Terrorism Expert:  The defendant's motion to preclude testimony from Dr. Aaron Zelin is meritless.  The Government's expert notice complies with the requirements of Rule 16(a)(1)(G), and the testimony is admissible pursuant to Rules 401, 702, 703, and 705.

3. Motion to Suppress Statements:  The defendant's motion to suppress certain of his post-arrest statements, filed months after the deadline for Rule 12 motions, is untimely.  In any event, it should be denied as moot, because the Government does not intend to offer evidence of that portion of the defendant's statement which he seeks to suppress.

4. Jury Selection:  The Court should reject the defendant's efforts to put irrelevant and inappropriate questions to the venire, and to turn decades of prudent jury-selection practice on its head by engaging in attorney-driven *voir dire*.

## DISCUSSION

### I.  The Court Should Admit the Terrorist Propaganda Materials

The Government seeks to introduce a limited subset of the Terrorist Propaganda Materials recovered from the Laptop seized from the defendant's apartment.[2]  The Terrorist Propaganda Materials constitute powerful direct evidence of the defendant's motives in carrying out the December 11 attack, and are highly probative of the defendant's knowledge that ISIS

---

[1] The Government incorporates by reference the defined terms from its September 27, 2018 motions *in limine* ("Gov't Br." (Dkt. 35)).  All such terms used herein have the meaning established in that prior submission.

[2] The Government intends to play no more than four of the nine video excerpts that were attached as Exhibit A to the Government's motions *in limine*.  The excerpts are each under one minute long. Furthermore, the Government intends to play the videos without sound.  The Government does not intend to play the two Anwar al-Awlaki lectures which were also included in Exhibit A.

engages in terrorist activity or terrorism, which is an element of Count One.  (Gov't Br. 4).

While conceding that the Terrorist Propaganda Materials are admissible for these proffered

purposes, the defendant challenges their relevance by advancing arguments that go to weight

rather than admissibility, and attempts to restrict the Government's proof in this area only to his

post-arrest statement.  His arguments are meritless.  Courts within this Circuit have routinely

admitted such evidence in terrorism cases to prove the defendant's motive, intent, and

knowledge, and the Court should do so here.

The defendant concedes—as he must, in light of the controlling case law—that the

Terrorist Propaganda Materials are admissible, but argues that they are not relevant in the

absence of a showing that he actually viewed the videos in question.  But this is an argument to

be made to the jury, and has no bearing on whether the materials may be admitted in the first

place.  As an initial matter, during his Mirandized post-arrest interview, Ullah admitted to law

enforcement that he had viewed pro-ISIS videos and lectures online leading up to his attack.

(Gov't Br. 3-4).  But even if Ullah had not admitted to viewing videos like the Terrorist

Propaganda Materials on the Laptop the FBI found in his apartment—where law enforcement

also found bomb-making components such as metal pipes, wiring, and screws—there is no basis

to preclude the Government from offering materials from the Laptop.

For example, in *United States v. Mehanna*, the defendant challenged the admissibility of

"thumbnail" images retrieved from his computer, arguing that the images could exist on a

person's computer without the person's involvement or knowledge.  735 F.3d 32, 64 (1st Cir.

2013).  The First Circuit, affirming the admissibility of the evidence, held that the defendant's

objection "goes to the weight of the evidence, not to its admissibility" because "[o]ne logical

inference from the discovery of the thumbnails is that the defendant viewed and approved of such images." *Id.* at 65.  As such, "[t]he government was free to argue in favor of this inference, and the defendant was free to argue otherwise.  Jurors are not so naive that they must be shielded from choosing among reasonable but competing inferences extractable from proven facts." *Id.*; *see also*, *e.g.*, *United States v. Pugh*, 162 F. Supp. 3d 97, 116 (E.D.N.Y. 2016).

Similarly, here, the defendant's objection goes to the weight of the evidence and not its admissibility.  At trial, the Government is fully entitled to argue that the jury should infer—based on the defendant's admission that he watched pro-ISIS videos, the fact that the Terrorist Propaganda Materials were downloaded to the Laptop, and the other surrounding evidence—that the defendant watched the Terrorist Propaganda Materials.  The fact that this evidence could allow the jury appropriately to make such an inference clearly satisfies Rule 401's threshold requirement for relevance.  *See* Fed. R. Evid. 401.

The defendant's efforts to use his post-arrest statement to tie the Government's hands at trial also fail.  The defendant argues that the Terrorist Propaganda Materials are "needlessly [ ] cumulative" in light of the defendant's admissions to law enforcement that he was inspired by ISIS to carry out the December 11 attack, and became radicalized in part through viewing pro-ISIS videos online.  (Def. Br. 3 (alteration in original)).  The defendant may not dictate the contours of the Government's proof at trial, and cannot preclude the Government from offering evidence of his motive simply because he made certain admissions during his post-arrest statement.  *See United States v. Polouizzi*, 564 F.3d 142, 153 (2d Cir. 2009) ("[T]he Supreme Court has noted specifically that the government generally has a right to present evidence, rather than accept a stipulation, to establish the 'human significance' of the fact and 'to implicate the

law's moral underpinnings.'" (quoting *Old Chief v. United States*, 519 U.S. 172, 187-88 (1997))).  The Government is entitled to offer evidence—separate and apart from the defendant's post-arrest statement—of the defendant's motives for committing the December 11 attack, and his knowledge that ISIS is a terrorist group that engages in terrorism and terrorist activity.  The Terrorist Propaganda Materials are powerful evidence of Ullah's state of mind leading up to the attack, his radicalization, his embrace of terrorist ideology and ISIS, his knowledge that ISIS was a terrorist organization, and his desire to commit a lone-wolf attack targeting Americans, all of which go to the defendant's motive and intent in committing the crimes charged in each count of the Indictment, and, with respect to Count One, the defendant's knowledge that ISIS engages in terrorist activity or terrorism.  (*See* Gov't Br. 11-12 (collecting cases)).

The defendant's Rule 403 challenge similarly falls short.  Conceding that the Government has already excised the most violent and inflammatory content from the Terrorist Propaganda Materials, the defendant asks the Court to require the Government to go even further by excising *any* "inflammatory material," including depictions of "bombings," from the videos prior to their admission at trial.  (Def. Br. 4).  The defendant's attempt to prevent the jury from seeing *any* violence in the Terrorist Propaganda Materials—in a case that involves a bombing committed for and in the name of a terrorist organization—is both misguided and contrary to controlling law in this Circuit.  *See United States v. Salameh*, 152 F.3d 88, 111 (2d Cir. 1998) (upholding the admission of terrorist propaganda videos depicting a bombing "in light of their similarity to the actual bombing"); *United States v. Mercado*, 573 F.3d 138, 142 (2d Cir. 2009) (upholding Rule 403 determination where challenged evidence was "not especially worse or

<div align="center">4</div>

shocking than the transactions charged" and district court "gave several careful instructions to the jury regarding what inferences it could draw from the admitted evidence").

The Government has already significantly circumscribed the depictions of violence in the Terrorist Propaganda Materials—including by omitting scenes involving executions, dead bodies, and other graphic violence—but it is neither possible nor in any way required for the Government to fully sanitize the videos, which are by their nature violent. It is essential for the jury to view excerpts of the videos in order to understand the violent ideology that motivated Ullah to carry out the December 11 attack, and completely excising any "inflammatory material" would serve only to mislead the jurors by giving them an inaccurate view of these materials' nature. *See United States v. Abu-Jihaad*, 553 F. Supp. 2d 121, 128 (D. Conn. 2008) ("[I]t is difficult—if not impossible—for the Government to give the jury an accurate sense of the nature of these videos without playing for the jury some of the violent and graphic portions of the videos. Otherwise, the jury would have an inaccurate sense of their content."). The defendant has failed to, and cannot, show that any unfair prejudice substantially outweighs the significant probative value of the proffered video excerpts. (*See* Gov't Br. 13-14 (citing, *inter alia*, *Pugh*, 162 F. Supp. 3d at 115 (noting that courts weighing similar Rule 403 objections have found jihadist propaganda materials "are admissible to show intent in a material-support case, despite the fact that such videos and documents risk prejudice"))). The Court should admit the Terrorist Propaganda Materials.

Finally, the Government agrees that a limiting instruction is appropriate in order to address any potential concerns about unfair prejudice (Def. Br. 5; Gov't Br. 17), and will confer with the defense to propose an acceptable limiting instruction. *See, e.g.*, *Salameh*, 152 F.3d at

111-12 (upholding Rule 403 determination where "any prejudicial effect [terrorist propaganda materials] might have had was ameliorated by the trial court's instruction that mere possession of the literature is not illegal and that the defendants' political beliefs were not on trial").

**II.      The Defendant's Challenge to the Government's Terrorism Expert Fails**

The defendant moves to preclude testimony from the Government's expert witness on militant jihadist groups, Dr. Aaron Zelin, on the ground that the Government has failed to provide adequate expert notice.  (Def. Br. 5-6).  To the contrary, the Government has provided detailed and adequate expert notice, and the defendant has failed to demonstrate why Dr. Zelin's testimony should be precluded.

On August 7, 2018, the Government provided notice to the defense that it intended to call Dr. Zelin as an expert witness in "militant jihadist groups," including ISIS.  (*See* Aug. 7, 2018 Expert Notice, attached hereto as Exhibit A).  The Government's expert notice complied with Rule 16(a)(1)(G), by providing a "written summary of [Dr. Zelin's] testimony" and describing Dr. Zelin's "opinions, the bases and reasons for those opinions, and the witness's qualifications." Fed. R. Evid. 16(a)(1)(G).  The Government's notice attached Dr. Zelin's curriculum vitae, which details his qualifications, and transcripts of his prior testimony in *United States v. Pugh*, 15 Cr. 116 (NGG) (E.D.N.Y. 2016); *United States v. El Gammal*, 15 Cr. 588 (ER) (S.D.N.Y. 2017), and *United States v. Rahimi*, 16 Cr. 760 (RMB) (S.D.N.Y. 2017), which set forth Dr. Zelin's opinions and the bases and reasons for those opinions.  Specifically, Dr. Zelin testified as an expert witness in *Pugh*, *Gammal*, and *Rahimi* regarding, *inter alia*, the history, background, ideology, and means and methods of ISIS and AQAP, including those groups' propaganda efforts to inspire followers to commit "lone-wolf" terrorist attacks targeting westerners.  The

Government expects Dr. Zelin to offer similar testimony at trial here.[3]  Notably, at no time after the Government provided its expert notice did the defense ask for additional information about Dr. Zelin or the topics about which he will testify, or suggest in any way that the notice the Government provided was insufficient.

The Government's expert notice also satisfies Rules 702, 703, and 705.  Expert testimony is properly admitted to facilitate jurors' understanding of unfamiliar terms and concepts, and that is precisely what the Government seeks to do through Dr. Zelin.  The defendant admitted in his post-arrest statement to law enforcement that he was radicalized and motivated to commit the December 11 attack by viewing pro-ISIS videos online and reviewing lectures by Anwar al-Awlaki, a former leader of AQAP.  Shortly before committing the December 11 attack, as he also admitted in his post-arrest statement, Ullah posted a message to Facebook—"O Trump you fail to protect your nation"—using an Arabic moniker and an Arabic term that Ullah intended to convey that the attack was committed for and in the name of ISIS.

The Government intends to elicit testimony from Dr. Zelin regarding (i) the history, background, ideology, and means and methods of ISIS and AQAP, including their efforts to threaten, carry out, and inspire terrorist attacks in America, as discussed above and as set forth in the Government's expert notice; (ii) no more than four of the video excerpts from the Terrorist Propaganda Materials, *see* note 2, *supra*; and (iii) the meaning and significance of Arabic terminology used by Ullah in the above-described Facebook post that he made just prior to

---

[3] The Federal Defenders of New York—*i.e.*, the same office that represents Ullah—also represented the defendants in *Gammal* and *Rahimi*.

committing the attack.[4]  Dr. Zelin's testimony is necessary to ensure that the jury can assess such

evidence—which goes directly to the defendant's radicalization, motives for committing the

attack, and knowledge that ISIS is a terrorist organization—based on an accurate understanding

of the defendant's words, the videos that he viewed, and the terrorist ideology that he espoused.

*See, e.g.*, *United States v. Amuso*, 21 F.3d 1251, 1264 (2d Cir. 1994) (discussing appropriateness

of expert testimony regarding "the operational methods of organized crime families . . . beyond

the knowledge of the average citizen"); *United States v. Kassir*, 2009 WL 910767, at *3

(S.D.N.Y. 2009) ("'Expert witnesses are often uniquely qualified in guiding the trier of fact

through a complicated morass of obscure terms and concepts.'" (quoting *United States v.

Duncan*, 42 F.3d 97, 101 (2d Cir. 1994))).  Courts in this Circuit repeatedly have permitted

experts—including Dr. Zelin, who was permitted to testify in *El Gammal* and *Rahimi* over

defense objections nearly identical to those lodged here—to do just that by providing

information about terrorist organizations, their membership, and activities.  *E.g.*, *United States v.

Kadir*, 718 F.3d 115, 121-22 (2d Cir. 2013).[5]  Nor can there be any question that the

---

[4] The Government does not presently intend to introduce testimony from Dr. Zelin regarding any other "terms, images, symbols, and other content located in the defendant's electronic devices, online accounts, journals, and other materials recovered during the investigation of this case," beyond that which is specified herein.  (*See* Def. Br. 6).

[5] *United States v. Rahimi*, No. 16 Cr. 760 (RMB) (S.D.N.Y. 2017) (permitting expert testimony of Dr. Zelin over defense objection); *United States v. El Gammal*, No. 15 Cr. 588 (ER) (S.D.N.Y. 2017) (same); *United States v. Abu-Jihaad*, 553 F. Supp. 2d 121, 123-24 (D. Conn. 2008); *see also Kassir*, 2009 WL 910767, at *4-5; *United States v. Paracha*, 2006 WL 12768, at *18 (S.D.N.Y. 2006), *aff'd*, 313 F. App'x 347, 351 (2d Cir. 2008); *United States v. Sabir*, 2007 WL 1373184, at *7-8 (S.D.N.Y. 2007), *aff'd sub nom. United States v. Farhane*, 634 F.3d 127, 158-60 (2d Cir. 2011).

Government, through its August 7 expert notice and as supplemented by the foregoing, has provided the defense with more than ample notice of the subject matter of Dr. Zelin's anticipated testimony.  The Court should reject the defendant's challenges to Dr. Zelin's testimony, and allow that testimony at trial.

**III.     The Defendant's Suppression Motion Should Be Denied as Moot**

The Government does not intend to introduce evidence of the portion of the defendant's statements to law enforcement that the defendant seeks to preclude.  The defendant's motion therefore should be denied as moot.

**IV.     The Court Should Reject the Defendant's Proposals for Jury Selection**

Many of the defendant's proposals for jury selection—which include putting irrelevant and inappropriate questions to the venire, and engaging in attorney-driven *voir dire*—are inconsistent with well-established practices in this District, and should be rejected.

The Government objects to the defendant's array of proposed questions seeking to improperly probe potential jurors regarding irrelevant and potentially prejudicial topics, such as the "war on terror" (Question 25) and immigration (Questions 28-30).  (*See* Dkt. 40).  The Court should reject such improper and unnecessary questions and proceed with questions such as those proposed by the Government, which are both standard and specifically focused on the appropriate objectives of jury selection. *See United States v. Rahman*, 189 F.3d 88, 121 (2d Cir. 1999).

The defendant's request for an attorney-conducted *voir dire* is wholly unwarranted. There are "many articles relating the abuses of attorney-controlled [*v*]*oir dire*, which suggest that a reasonable inquiry into the essentials raised in the particular case should be sufficient, and that

the trial judge should retain the discretion to apply limits." *United States v. Barnes*, 604 F.2d 121, 142 n.10 (2d Cir. 1979). Consistent with this authority, every recent terrorism-related case identified by the Government that has been tried in this District—including *Rahimi*, in which the defense made an identical request—has relied exclusively upon Court-conducted *voir dire*.[6] The defendant's contention that the attorneys are more capable than the Court of eliciting truthful responses from potential jurors is flawed and, in any event, an unpersuasive basis for rejecting the great weight of the authority counseling against attorney-driven *voir dire*.

## CONCLUSION

For the foregoing reasons, the defendant's motions *in limine* should be denied.

Dated: New York, New York
        October 10, 2018

<div style="margin-left:50%">

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

By:            /s/
        Shawn G. Crowley
        Rebekah Donaleski
        George D. Turner
        Assistant United States Attorneys
        212-637-1098 / 2423 / 2562

</div>

---

[6] *See, e.g.*, *United States v. El Gammal*, No. 15 Cr. 588 (ER) (S.D.N.Y. 2017); *United States v. Fawwaz*, No. 98 Cr. 1023 (LAK) (S.D.N.Y. 2015); *United States v. Mustafa*, No. 04 Cr. 356 (KBF) (S.D.N.Y. 2014); *United States v. Abu Ghayth*, No. 98 Cr. 1023 (LAK) (S.D.N.Y. 2014); *United States v. Nayyar*, No. 09 Cr. 1037 (RWS) (S.D.N.Y. 2012); *United States v. Bout*, No. 08 Cr. 365 (SAS) (S.D.N.Y. 2012); *United States v. al Kassar*, No. 07 Cr. 354 (JSR) (S.D.N.Y. 2009); *United States v. Kassir*, No. 04 Cr. 356 (JFK) (S.D.N.Y. 2009); *United States v. Sabir*, No. 05 Cr. 673 (LAP) (S.D.N.Y. 2007); *United States v. Stewart*, No. 02 Cr. 395 (JGK) (S.D.N.Y. 2004).